GEORGE JOUDREY, executor, *vs.* NASHOBA COMMUNITY HOSPITAL, INC. No. 90-P-990. June 3, 1992. *Medical Malpractice,* Tribunal, Bond, Standard of care, Expert opinion. *Negligence,* Doctor, Medical malpractice, Proximate cause. *Proximate Cause.*

The plaintiff, as executor of the estate of Judith D. DeFelice (DeFelice), brought this malpractice action against Nashoba Community Hospital, Inc., and its employee, Dr. Charles Robinson[1] to recover damages sustained as a result of Dr. Robinson's alleged negligence in failing correctly to diagnose DeFelice's uterine cancer. A medical malpractice tribunal convened pursuant to G. L. c. 231, § 60B, found that the plaintiff's offer of proof "if properly substantiated, is not sufficient . . . to raise a legitimate question of liability appropriate for judicial inquiry." A Superior Court judge entered a judgment dismissing the complaint as to Nashoba Community Hospital, Inc., after the plaintiff failed to file the statutory bond which the tribunal had ordered as a condition of maintaining the action. G. L. c. 231, § 60B. The plaintiff timely filed a notice of appeal.

The plaintiff's offer of proof consisted of (1) excerpts from DeFelice's 1979 and 1982 hospital records, (2) correspondence from Dr. Merle Legg, the pathologist who ultimately diagnosed DeFelice's cancer, (3) an opinion

---

[1]Dr. Robinson was defaulted for failure to file an answer, and he is not a party to this appeal.

letter from Dr. Legg, (4) an opinion letter from DeFelice's oncologist, Dr. Sabina Wallach, and (5) DeFelice's death certificate.

The tribunal, without passing on the weight or credibility of any of the evidence, see *Gugino* v. *Harvard Community Health Plan*, 380 Mass. 464, 468 (1980); *Blake* v. *Avedikian*, 412 Mass. 481, 483 (1992); *DiNozzi* v. *Lovejoy*, 20 Mass. App. Ct. 973, 974 (1985), could have found the following facts. DeFelice entered Nashoba Community Hospital on October 15, 1979, to undergo a total abdominal hysterectomy due to a rapidly growing fibroid uterus. Dr. Robinson, a staff pathologist at Nashoba, examined the preserved uterus and prepared five tissue slides, including slides of a tumor found in the uterus, for examination. Based on his examination, Dr. Robinson filed a report stating his diagnosis of the tumor as benign leiomyofibroma. Approximately two and a half years later, in May 1982, DeFelice was admitted to New England Deaconess Hospital. An ultrasound test revealed that DeFelice had a complex pelvic mass as well as a chest wall mass. A biopsy of the chest wall mass showed a high grade leiomyosarcoma. A pathologist at New England Deaconess Hospital, Dr. Legg, determined that the chest wall cancer was a metastasis, a cancer which had spread from another area of the body. In the search for the primary site of the cancer, Dr. Legg sent for the five slides and preserved tissue samples from Nashoba Community Hospital. Dr. Legg examined the 1979 slides and concluded that a diagnosis of primary leiomyosarcoma could be made. Dr. Legg also determined that the likely origin of DeFelice's present cancer was the leiomyosarcoma of the uterus. The leiomyosarcoma caused DeFelice's death on May 11, 1984.

The plaintiff argues that the offer of proof showed sufficient medical evidence which, if substantiated at trial, would be sufficient to withstand a motion for a directed verdict. *Little* v. *Rosenthal*, 376 Mass. 573, 578 (1978). *Gugino* v. *Harvard Community Health Plan*, 380 Mass. at 467-468. "A plaintiff's offer of proof as to negligence will prevail before a malpractice tribunal, under the *Little* directed-verdict test, (1) if a doctor-patient relationship is shown, (2) if there is evidence that the doctor's performance did not conform to good medical practice, and (3) if damage resulted therefrom." *Kapp* v. *Ballantine*, 380 Mass. 186, 193 (1980). In deciding whether the tribunal was correct in its finding, we must determine whether, from any of the evidence in the plaintiff's offer of proof, "any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Glicklich* v. *Spievack*, 16 Mass. App. Ct. 488, 489-490 (1983), quoting from *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972).

1. *Negligence.* The plaintiff claims that Dr. Robinson was negligent in 1979 because he failed to diagnose the leiomyosarcoma of the uterus. In order to show negligence, the plaintiff bears the burden of presenting evidence that Dr. Robinson failed to "exercise the degree of care and skill of th average qualified" pathologist. *Brune* v. *Belinkoff*, 354 Mass. 102, 109

(1968). *Stepakoff* v. *Kantar*, 393 Mass. 836, 840 (1985). The plaintiff's offer of proof with respect to Dr. Robinson's negligence consisted of an opinion letter from Dr. Legg, as well as two letters written by Dr. Legg after he first reviewed the slides in 1982.

It is apparent from Dr. Legg's letters that the diagnosis of leiomyosarcoma was not an easy one to make. Dr. Legg wrote that the uterine tumor showed variability from spot to spot. He stated that one spot was "quite heterogeneous which is usually a reassuring thing on the side of a benign tumor." He also stated, however, that "[t]he problem is that there are some quite cellular areas in which mitoses are present." Dr. Legg described the criterion for diagnosis of leiomyosarcoma which is based on a test called "mitosis counting." He indicated that this test is well known and stated that "many consider it the most important criterion by far, in diagnosing leiomyosarcoma of the uterus." Dr. Legg found that he could make a diagnosis of leiomyosarcoma based on his count of mitoses in localized areas. He concluded that, "despite the confusing character of the tumor" and the fact that "a pathologist could be misled," "*the tumor should at least have been categorized as of borderline malignancy by the average qualified pathologist if not leiomyosarcoma or else have referred it to a consultant as a problem case*" (emphasis supplied).

Dr. Legg's letters allow for a finding that Dr. Robinson was negligent when he misdiagnosed the tumor as benign. A jury could reasonably conclude that it was more likely than not that Dr. Robinson should have determined that the tumor was problematic and difficult to diagnose and referred the case to a consultant. The plaintiff satisfied his burden with regard to negligence because he presented expert evidence regarding the standards for the average qualified pathologist and he provided evidence from which a conclusion could be drawn that Dr. Robinson's professional conduct fell below those standards. *Held* v. *Bail*, 28 Mass. App. Ct. 919, 920 (1989).

2. *Causation.* The plaintiff bears the burden of showing a causal connection between Dr. Robinson's negligence and any harm suffered by DeFelice. *Semerjian* v. *Stetson*, 284 Mass. 510, 512 (1933). *Murphy* v. *Conway*, 360 Mass. 746, 749 (1972). *Harlow* v. *Chin*, 405 Mass. 697, 702 (1989). *Glicklich* v. *Spievack*, 16 Mass. App. Ct. at 492. "Not a great deal is required to fend off a directed verdict on the issue of causation. It is enough to adduce evidence that there is a greater likelihood or probability that the harm to the plaintiff flowed from conduct for which the defendant was responsible." *Held* v. *Bail*, 28 Mass. App. Ct. at 921. The plaintiff is not required to show that the physician's negligence is the exact cause of the harm nor is the plaintiff required to exclude all possibility that the harm would not have occurred absent the physician's negligence. *Samii* v. *Baystate Med. Center, Inc.*, 8 Mass. App. Ct. 911, 912 (1979). *Glicklich* v. *Spievack*, 16 Mass. App. Ct. at 495.

In cases in which a physician's negligent conduct has caused a delay in the diagnosis of a patient's cancer, proximate causation can be proved by expert evidence which shows, to a reasonable medical certainty, that the patient "would have had a much improved chance of survival or longer life if diagnosis and treatment meeting accepted standards of care had been appropriately initiated." *Cusher* v. *Turner*, 22 Mass. App. Ct. 491, 498 (1986), quoting from *Glicklich* v. *Spievack*, 16 Mass. App. Ct. at 495. The plaintiff claims that due to Dr. Robinson's negligence DeFelice was "deprived . . . of medical treatment which would have increased the quality of her life and would have increased the probability of her survival or longer life beyond May 11, 1984."

The plaintiff offered a letter from Dr. Wallach, DeFelice's oncologist, to establish that DeFelice was harmed by Dr. Robinson's negligence. According to Dr. Wallach, the medical management of DeFelice's case would have been far different if her leiomyosarcoma had been diagnosed in 1979. First, DeFelice would have been evaluated for metastatic disease and she would have been closely observed. Second, Dr. Wallach would have had the opportunity to consider initiating a course of chemotherapy prior to 1982. Dr. Wallach stated that if DeFelice's case had been properly managed since 1979, such management "would likely have improved any disease-free interval and quality of life, and in addition, would likely have added to a longer life and improved chance of overall survival."

The defendant argues that Dr. Wallach's letter does not connect Dr. Robinson's negligence with any damage to DeFelice because Dr. Wallach's opinion is premised upon a definite diagnosis of leiomyosarcoma in 1979. The defendant claims that there is no evidence which shows that the tumor would have been properly diagnosed in 1979 if Dr. Robinson had categorized the tumor as of borderline malignancy or if Dr. Robinson had referred the slides to a consultant as a problem case. The defendant, however, implicitly concedes that Dr. Wallach's letter shows to a reasonable medical certainty that DeFelice would have had a much improved chance of survival or longer life if the leiomyosarcoma had been diagnosed in 1979.

A jury would not, of course, be free to choose, without the aid of expert testimony, among the alternatives as to the negligence of Dr. Robinson offered in Dr. Legg's opinion. See *Murphy* v. *Conway*, 360 Mass. at 749; *Forlano* v. *Hughes*, 393 Mass. 502, 507 (1984). On the offer of proof submitted to the tribunal, a jury would only be warranted in concluding that it was negligent for Dr. Robinson to have failed to refer DeFelice's case to a consultant as a problem case. However, even construing Dr. Wallach's opinion as to causation in the most restrictive sense, that is, as dependent on a definite diagnosis of cancer in 1979, we think, although the case is a close one, the offer of proof, together with reasonable inferences, is sufficient on the question of causation to survive the directed verdict test. A jury would be warranted in inferring that more likely than not a consultant

would be an expert (or at least one more knowledgeable than Dr. Robinson) on the diagnosis of the leiomyosarcoma said to be present in DeFelice's uterus. They could also reasonably infer (based upon Dr. Legg's description of his analysis and statement of the accepted criteria for diagnosis) that such a consultant would more likely than not have accurately diagnosed DeFelice's condition within a reasonable time following the removal of her uterus. Dr. Wallach's opinion would then provide the necessary causal link. In all of this, of course, there would be questions of weight and credibility for the jury's appraisal.

Accordingly, the judgment of dismissal because of the plaintiff's failure to file a bond is reversed. The report of the medical malpractice tribunal is vacated and there shall be substituted therefor as to Nashoba Community Hospital, Inc., a finding that upon the offer of proof presented, the evidence, if properly substantiated, is sufficient to raise a legitimate question of liability appropriate for judicial inquiry. The case is then to stand for trial.

*So ordered.*

*Leonard Glazer* for the plaintiff.
*Mary T. Gibbons* for the defendant.