JENNIFER SAUNDERS vs. JOHN READY & others.[1]

No. 06-P-403.

Suffolk. November 13, 2006. - March 9, 2007.

Present: RAPOZA, C.J., ARMSTRONG, & DREBEN, JJ.

*Medical Malpractice,* Tribunal, Expert opinion. *Negligence,* Doctor, Medical malpractice. *Practice, Civil,* Offer of proof.

A medical malpractice plaintiff's offer of proof, consisting of four letters written by an orthopedic surgeon explaining the plaintiff's damage as a deviation from the standard of care during the plaintiff's surgery, was sufficient to pass the tribunal stage of proceedings, as it raised a legitimate question of liability appropriate for judicial inquiry. [404-406]

CIVIL ACTION commenced in the Superior Court Department on April 13, 2004.

The case was heard by *Thomas P. Billings,* J.

*Samuel M. Pollack* for the plaintiff.

*Maria L. Mazur* for the defendants.

ARMSTRONG, J. Jennifer Saunders, a thirty-seven year old patient of the defendant John Ready, an orthopedic surgeon, underwent a total hip replacement on May 16, 2001, conducted by Ready. From that time on, Saunders suffered from acute sciatic pain in her right leg and numbness in her right foot. Her action for medical malpractice against John Ready, his orthopedic practice group, and the hospital in which the operation was performed was referred to a medical malpractice tribunal pursuant to G. L. c. 231, § 60B, which found, as to each of the three defendants, that Saunders' injury was "merely an unfortunate medical result." Saunders failed to post the bonds required, judgment of dismissal entered, and she filed a timely notice of appeal.

Before a malpractice tribunal, a plaintiff's offer of proof must

[1]Brigham Orthopedic Associates, Inc.; and Brigham and Women's/Faulkner Hospital, Inc.

(1) show that the defendant is a provider of health care as defined in G. L. c. 231, § 60B; (2) demonstrate that the health care provider did not conform to good medical practice; and (3) establish resulting damage. *Santos* v. *Kim*, 429 Mass. 130, 132-134 (1999). *Anderson* v. *Attar*, 65 Mass. App. Ct. 910, 911 (2006). At issue here is Ready's deviation from the standard of care and causation.

Saunders' offer of proof consisted of four letters written by Dr. Richard S. Goodman, whose credentials in orthopedic surgery are not challenged. His opinion, in essence, was that Saunders was known not to have sciatic nerve damage prior to the operation; that it was apparent immediately after the operation that the sciatic nerve was damaged; that damage to the sciatic nerve from hip replacement surgery is not a known unavoidable risk of that procedure because it is the duty of the surgeon at the outset to locate and isolate the nerve so as to protect it from inadvertent damage; and that the occurrence of damage nevertheless only can be explained by "a deviation from the standard of care" during the surgery.[2]

The defendants argued before the tribunal (and reiterate here)

---

[2]A portion of Dr. Goodman's final letter states:

"In this report the preoperative examination by [Ready] on 3/26/03 has the 'neurovascularly intact.' It was appropriate for him to do a neurovascular examination prior to surgery. This confirms the absence of any preoperative neurological vascular disorder prior to surgery.

"The operative procedure for a total hip replacement requires careful protection of the sciatic nerve. It is imperative that the surgeon does not stretch the sciatic nerve, cut the sciatic nerve, pull at the sciatic nerve[,] or otherwise significantly interfere with the function of the sciatic nerve during surgery. It is imperative that the surgeon either protects the nerve or does an operative incision which is not anatomically close to the sciatic nerve or isolates the sciatic nerve so it is protected.

"It is further imperative that none of the instruments either significantly stretch the sciatic nerve, contuse the sciatic nerve and that the prosthesis does not stretch the sciatic nerve secondarily or permanently in any significant manner.

"Although, [Ready] does not in his operative report describe damage to the sciatic nerve, postoperatively the patient had signs and symptoms of sciatic neuropathy with complex regional pain syndrome secondary to the sciatic neuropathy.

that the expert opinion failed to identify precisely how Ready's care deviated from the standard of care and failed to draw a direct causal link from any particular act of Ready's to Saunders' injury, leaving those required elements, impermissibly, to speculation. See *Girard* v. *Crawford*, 13 Mass. App. Ct. 916, 916 (1982). Saunders' case in that regard is hampered by the absence, in the postoperative report, of any mention of damage to the sciatic nerve. In the circumstances of a case like this, where the surgeon accused of negligence fails to record in a postoperative report any indication of an injury, it is difficult to discern how a plaintiff would be able to prove the negligent act and causation directly, especially at the tribunal stage before discovery can be conducted.

In circumstances such as those presented here, the necessary elements can be proved only by reasonable inferences drawn from the offer of proof. See *Edwards* v. *Boland*, 41 Mass. App. Ct. 375, 380 (1996) (plaintiff entitled to res ipsa loquitur instruction in medical malpractice case where jury reasonably could have found that plaintiff's nerve and artery would not have been severed if not for some negligence on part of defendant, and plaintiff's expert testified that such severance does not ordinarily occur in absence of negligence). See also *Lambley* v. *Kameny*, 43 Mass. App. Ct. 277, 286 (1997) (evidence taken in light most favorable to plaintiff includes all permissible inferences). But see *Forlano* v. *Hughes*, 393 Mass. 502, 506-508 (1984) (directed verdict for defendants should have been allowed where evidence indicated injury could have occurred in one of two ways, only one of which involved negligence of physician).

"The surgery was done on March 2001, and by May 2002 or approximately fourteen months later, report of Dr. Karli noted 'persistent distal right lower extremity pain due to previous right sciatic nerve injury diagnosed by electromyography.' This demonstrates that the postoperative sciatic neuropathy was of a significant nature and a permanent nature.

"Causation of significant, permanent sciatic neuropathy is beyond the reasonable standard of care for any orthopedic surgeon doing a total hip replacement procedure in a patient, in the United States, in the year 2001 in any state of [the] union. Therefore, this should be considered a significant complication with a deviation from the standard of care."

Saunders *v.* Ready.

The line between impermissible speculation and permissible inference is not a clearly marked, bright line. Rather, it is one that must turn on an informed judgment of the reasonableness of the inference drawn. If Dr. Goodman's analysis of the operation is believed, we cannot say that an inference of negligence is unreasonable or far-fetched. It may transpire that, at the trial stage, his view will be shown to be greatly oversimplified, but in our opinion that is not a conclusion that should be drawn on the record before the tribunal. Saunders' offer of proof is sufficient to pass the tribunal stage.

The judgment dismissing Saunders' claims against the defendants, entered December 13, 2004, must be vacated. The matter is remanded to Superior Court where the tribunal's decisions are to be struck and, in substitution thereof, a determination shall be entered that the offer of proof by Saunders is sufficient to raise a legitimate question of liability appropriate for judicial inquiry.

*So ordered.*