The plaintiffs appeal from the dismissal of this medical malpractice action for failure to post a bond after a medical malpractice tribunal determined that the plaintiffs' offer of proof failed to "raise a legitimate question of liability appropriate for judicial inquiry" and dismissed the claims.[4] G. L. c. 231, § 60B, inserted by St. 1975, c. 362, § 5. We vacate and remand.
A plaintiff's offer of proof will prevail before a tribunal if he (1) shows "that the defendant is a provider of health care as defined in § 60(B)"; (2) demonstrates "that the health care provider did not conform to good medical practice"; and (3) establishes "resulting damage." Saunders v. Ready, 68 Mass. App. Ct. 403, 403-404 (2007). In reviewing the tribunal's determination, we apply a directed verdict standard and ask whether "any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." Joudrey v. Nashoba Community Hosp., Inc., 32 Mass. App. Ct. 974, 975 (1992), quoting from Glicklich v. Spievack, 16 Mass. App. Ct. 488, 489-490 (1983). See, e.g., Blake v. Avedikian, 412 Mass. 481, 484 (1992), citing Kopycinski v. Aserkoff, 410 Mass. 410, 415, 417-418 (1991) ("In a proceeding before a medical malpractice tribunal the evidence presented by the offer of proof is viewed by a standard comparable to a motion for a directed verdict, that is, in a light most favorable to the plaintiff").
The plaintiffs' offer of proof consisted of the medical records[5] relating to the robotic-assisted laparoscopic radical prostatectomy with lymph node dissection performed by defendants Drs. Chang and Welchons as well as an opinion letter and curriculum vitae of Dr. Thomas E. Kasper, a board-certified urologist. Among other things, the medical records reflect that Hem-o-Lok clips were used during the operation. In Dr. Kasper's opinion letter, he stated, "Weck Hem-o-Lok ligating clip (clip or HOLC) is a nonabsorbable polymer clip with a lock engagement feature. It is used during open or minimally invasive surgeries to permanently close bleeding vessels or tissue structures. With regard[ ] to robot assisted and laparoscopic radical prostatectomies, the Weck clips are used to control the lateral pedicles."
After the surgery in 2012 and continuing into 2014, plaintiff Jeffrey Chandler suffered from abdominal pain, incontinence, infection, and other problems. Finally, in February, 2014, a cystoscopy revealed a large bladder stone. A subsequent procedure removed the stone and led to the discovery of a Wek Hem-o-Lok clip within it. Dr. Kasper is of the view that the clip had been inserted during the prostatectomy performed by the defendants, traveled to the bladder when the bladder neck was open during that procedure, and had not been located or retrieved prior to closure.
Dr. Kasper opined that Drs. Chang and Welchons violated the applicable standard of care[6] when they "failed to properly apply the clip, recognize and appreciate the loose clip, actively search for said clip, locate said clip in Mr. Chandler's bladder, and retrieve during surgery prior to closing the bladder neck." He concluded that, as a direct result of substandard care on the part of Drs. Chang and Welchons, "a HOLC was left behind in Mr. Chandler's bladder which went undiagnosed for approximately [eighteen] months resulting in pain, infection, stone formation, worsening incontinence and the need for otherwise unnecessary treatment including surgery to remove the stone and clip."
The defendants argue that Dr. Kasper's opinion is conclusory because he does not discuss the October and November, 2012, CT scans and does not address radiologists' failure to detect the clip on these scans. First, we note that Dr. Kasper in fact referred to the November 1, 2012, and to the 2013 CT scans. In any event, challenges to the weight and credibility of the plaintiffs' evidence are improper at this stage, because the tribunal "may not examine the weight or credibility of the evidence." Cooper v. Cooper-Ciccarelli, 77 Mass. App. Ct. 86, 91 (2010). "[A] factually based statement by a qualified expert [such as we have here in this case], without more, is sufficient to meet the tribunal standard." Booth v. Silva, 36 Mass. App. Ct. 16, 21 (1994).
The defendants also argue that "the mechanism of injury is speculative" and "makes no causal link between the alleged negligence and these general complaints." With respect to causation, "[n]ot a great deal is required to fend off a directed verdict on the issue of causation. It is enough to adduce evidence that there is a greater likelihood or probability that the harm to the plaintiff flowed from conduct for which the defendant was responsible." Joudrey, 32 Mass. App. Ct. at 976, quoting from Held v. Ball, 28 Mass. App. Ct. 919, 921 (1989). In addition, "[t]he line between impermissible speculation and permissible inference is not a clearly marked, bright line. Rather, it is one that must turn on an informed judgment of the reasonableness of the inference drawn." Saunders, 68 Mass. App. Ct. at 406.
Accordingly, the judgment dismissing the plaintiffs' claims against the defendants is vacated. The matter is remanded to the Superior Court where the findings of the tribunal are to be replaced by the decision of this court and a determination shall enter that the offer of proof by the plaintiffs, if properly substantiated, is sufficient to raise a legitimate question of liability appropriate for judicial inquiry. The plaintiffs may proceed with their claims.
So ordered
Vacated and remanded.

After the tribunal's determination, the plaintiffs did not post the statutory bond. The case against both defendants was dismissed and final judgment entered.

The records are from Faulkner Hospital; Jordan Hospital/Beth Israel Deaconess Hospital, Plymouth; Steven Chang, M.D.; Plymouth Bay Urology; and PMG Physician Associates, P.C., Pinehills.

Dr. Kasper opined that "[t]he accepted standard of care of the average qualified urologist and resident utilizing the HOLC during a robotic assisted radical prostatectomy required the physician to properly apply the clip, recognize and appreciate a loose clip or clip that wasn't locked properly, actively search, locate, and retrieve any loose clips, prior to closing the bladder neck, and prior to terminating the surgery."