The plaintiffs appeal from the dismissal of their complaint for failure to pay the appeal bond, following an adverse finding by a medical malpractice tribunal pursuant to G. L. c. 231, § 60B. At issue is whether the offer of proof, which was supported by an expert affidavit, was sufficient to raise a legitimate question of liability appropriate for judicial inquiry. We reverse.
Background. After a hospitalization at North Shore Medical Center/Salem Hospital (NSMC) primarily for pneumonia, Edward A. Cahill was admitted to the Sutton Hill Center (Sutton Hill) for rehabilitation. Sutton Hill placed Cahill, age eighty-seven, in a room with a patient suffering from a Clostridium Difficile (C. Diff) infection. Sutton Hill neither informed Cahill's family members about the infection nor advised them to follow any infection protocols. During her frequent visits, Cahill's daughter, Eileen Moali, never observed the staff use gowns or gloves. On September 24, 2013, twelve days after his admission, Sutton Hill transferred Cahill to another room.
Cahill initially made progress in occupational and physical therapy. As time went on, however, Cahill sought to avoid therapy. Repeated incidents of chills, nausea, soft and loose stools, and diarrhea were observed and documented in Cahill's records. The Sutton Hill staff did not determine the cause of these symptoms. Moreover, although Cahill's white blood cell count had decreased from September 18, 2013, to September 24, 2013, it increased on October 10, 2013. At no time thereafter did the Sutton Hill staff address the elevated white blood cell count with either Cahill or his family. On October 15, 2013, despite Cahill's continuing symptoms that were consistent with a C. Diff infection, Sutton Hill discharged him to an assisted living facility.
On the following day, October 16, 2013, Cahill sought medical help for his ongoing loose bowel movements at the NSMC emergency room. He was admitted and subsequently discharged on October 18, 2013.
On October 22, 2013, Cahill was admitted to the Beverly Hospital where he tested positive for C. Diff. A computerized tomograph scan of his abdomen and pelvis revealed the swelling of the entire wall of his colon, suggestive of colonic ischemia. Cahill was discharged on October 29, 2013, and died two days later while in hospice care. His death certificate listed colitis as one of the "significant conditions contributing to [his] death."
Subsequently, Moali filed a complaint with the Division of Health Care Quality of the Department of Public Health (DPH). After investigation, the DPH validated Moali's claim that Cahill received "poor quality of care" at Sutton Hill.
Discussion. Before a medical malpractice tribunal, a plaintiff's offer of proof must show (1) "the defendant is a provider of health care as defined in G. L. c. 231, § 60B ; (2) ... the health care provider did not conform to good medical practice; and (3) ... resulting damage." Goudreault v. Nine, 87 Mass. App. Ct. 304, 308 (2015), quoting Saunders v. Ready, 68 Mass. App. Ct. 403, 403-404 (2007). The sufficiency of an offer of proof is tested under the familiar directed verdict standard. See Goudreault v. Nine, 87 Mass. App. Ct. at 308. The tribunal must not only consider the evidence contained in the offer of proof in the light most favorable to the plaintiff, but also draw all reasonable inferences in the plaintiff's favor and reject the temptation to draw any unfavorable inferences. Id. at 309. "Not a great deal is required to fend off a directed verdict on the issue of causation. It is enough to adduce evidence that there is a greater likelihood or probability that the harm to the plaintiff flowed from conduct for which the defendant was responsible" (quotation omitted). Joudrey v. Nashoba Community Hosp., Inc., 32 Mass. App. Ct. 974, 976 (1992). As we frequently remind litigants, the offer of proof must be given an "indulgent reading." Kilmartin v. Lowell Gen. Hosp., 23 Mass. App. Ct. 901, 902 (1986).
The plaintiffs allege that Sutton Hill was negligent for having failed to diagnose and to treat Cahill while he was a patient. The plaintiffs' expert, Dr. Marc R. Shepard, whose qualifications were not challenged by Sutton Hill, opined that (1) Cahill "exhibited a number of symptoms that, combined with his exposure [to C. Diff] and risk factors [antibiotic use, prolonged hospital stay, advanced age, and co-morbid illnesses including his renal failure ] should have heightened suspicion for C-Diff"; (2) the standard of care in these circumstances required "that he be given appropriate and prompt diagnostic testing for C-Diff"; (3) once Cahill's white blood cell count became elevated, "the concern for the cause of [the] infection should have been heightened"; and (4) "[d]espite a clear deterioration in his condition, repeated complaints of soft and/or loose stools, nausea and chills, and laboratory studies indicative of infection, the staff did nothing to diagnose and treat his condition." Dr. Shepard ultimately opined, to a reasonable degree of medical certainty, that the failure of the Sutton Hill staff to diagnose C. Diff colitis allowed it to progress to the point where significant damage was done to Cahill's colon, and that the untreated colitis was a substantial contributing cause of Cahill's death.
On appeal, Sutton Hill claims that the plaintiffs failed to establish proximate causation. Sutton Hill first argues that the evidence of C. Diff exposure in the offer of proof was deficient because it relied on inadmissible hearsay -- a conversation between Moali and the sister of Cahill's roommate.[5] Even if the evidence of exposure to C. Diff in the offer of proof was inadmissible, that fact does not assist Sutton Hill. The plaintiffs, supported by their expert witness, maintain that the failure to conduct prompt diagnostic testing on such a visibly sick, at-risk patient constituted malpractice. This theory of liability did not require a showing that Cahill contracted C. Diff at Sutton Hill.
Next, in an attempt to show a break in the chain of medical causation, Sutton Hill argues that "[t]he [u]ncontroverted October 18, 2013 [NSMC] [d]ischarge [s]ummary" established that Cahill was "infection-free" after he left Sutton Hill. Yet, the NSMC discharge report was not before the tribunal; only the DPH investigator's summary of the report was available. Moreover, Sutton Hill improperly interprets the DPH report in the light most favorable to itself. The NSMC discharge summary, as described by the DPH investigator, states that NSMC treated Cahill with intravenous fluids for dehydration; Cahill had "failure to thrive"; and Cahill had "no signs of an infection, a virus was suspected, and [his] symptoms resolved quickly." There was no statement to the effect that a C. Diff infection was ruled out.[6] The DPH investigator's statements are also contradicted by Cahill's Beverly Hospital medical records, which reported that Cahill still had diarrhea during his second NSMC hospitalization. Thus, at best, the meaning of the NSMC discharge report was a question of fact for the jury. See Kopycinski v. Aserkoff, 410 Mass. 410, 418 (1991).
We perceive no fatal conflict between the plaintiffs' offer of proof and their negligence claim. In formulating his opinion, Dr. Shepard did not rely on facts or assumptions that were contradicted by the record. Dr. Shepard's opinion is based on specific facts that are firmly rooted in the evidence. Compare Booth v. Silva, 36 Mass. App. Ct. 16, 20-21 (1994). The plaintiffs were not required to include the NSMC records in their offer of proof or to explain why they had been omitted. Nor were they required to exclude all other possible causes of the harm suffered by Cahill. See Joudrey v. Nashoba CommunityHosp., Inc., 32 Mass. App. Ct. at 976.
Dr. Shepard indicated in his affidavit that he had reviewed Cahill's NSMC records. He did not mention them further. His failure to address the NSMC records goes to the weight and credibility of his opinion, matters beyond the scope of the tribunal's authority. See Goudreault v. Nine, 87 Mass. App. Ct. at 308. A fair inference, moreover, is that nothing in the NSMC medical records was important to Dr. Shepard's opinion that Sutton Hill deviated from the appropriate standard of care by failing to test for C. Diff and to diagnose Cahill's condition, and that nothing in the NSMC records required him to change his analysis.
We conclude that the plaintiffs' offer of proof adequately established the existence of a causal connection between Sutton Hill's negligence and the harm suffered by Cahill. Any contrary evidence on medical causation should be assessed at a later stage of the proceedings. See Kilmartin v. Lowell Gen. Hosp., 23 Mass. App. Ct. at 902.
Conclusion. The judgment is reversed, the finding of the tribunal is set aside, and a new tribunal finding shall enter in favor of the plaintiffs. This case is remanded for further proceedings consistent with this memorandum and order.
So ordered.
Reversed and remanded.

We note that the DPH report states that "[t]he clinical record indicated that [Cahill's roommate] received anti-infective medication for [C. Diff] colitis and was on contact precautions."

In light of Cahill's Beverly Hospital record stating that all along, from the onset of his diarrhea at Sutton Hill up through the diagnosis and treatment of the C. Diff at Beverly Hospital, Cahill had ongoing diarrhea, a jury could permissibly infer that NSMC overlooked the infection.