ESTHER POLONSKY *vs.* UNION HOSPITAL.

Essex.   December 13, 1979. — March 27, 1981.

Present: ARMSTRONG, ROSE, & KASS, JJ.

*Negligence*, Hospital, Expert opinion.   *Medical Malpractice*, Hospital, Expert opinion.

In a medical malpractice action to recover for injuries suffered by an elderly hospital patient when she fell and fractured a hip in the hospital corridor, evidence that the plaintiff had been administered medication which had on its label a warning that it may cause dizziness, drowsiness, and falling and that the hospital had a regulation concerning the necessity of using bedside rails for a patient in the plaintiff's condition was sufficient, without additional expert opinion testimony, to warrant a finding that the hospital's nurse had been negligent when she failed to raise the lower bedrails after administering the medication to the plaintiff.   [624-625]

CIVIL ACTION commenced in the Superior Court on March 24, 1977.

The case was tried before *McNaught*, J.

*John A. Johnson* for the defendant.

*John S. Legasey* for the plaintiff.

ARMSTRONG, J.   In 1976 the plaintiff, while a patient in the Union Hospital in Lynn (hospital), suffered a fall and fractured her hip.   In this malpractice action against the hospital, the plaintiff recovered damages in the amount of the statutory limit of $20,000.   See G. L. c. 231, § 85K, inserted by St. 1971, c. 785, § 1.   The case is before us on the hospital's appeal, which is based on a contention that the trial judge erred in denying the hospital's motion for a finding in its favor notwithstanding the jury's verdict.   See Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974).

Many of the facts were stipulated, and there is no dispute over such evidence as there was.   The plaintiff, then 80

years old, suffered a heart attack on October 17, 1976, and then was admitted to the hospital's "special care unit." On October 26, she was transferred out of that unit to a double room in a regular patient ward. Her bed had two pairs of side rails, one pair for the upper half of the bed and the other pair for the lower half. That night, at about 10:50 P.M., a nurse employed by the hospital gave the plaintiff fifteen milligrams of flurazepam hydrochloride, a sleeping drug commonly known by the trade name, Dalmane.

At approximately midnight the plaintiff awoke and wanted to go to the bathroom. She was confused and, according to her later statements, thought she was at home. The upper side rails were raised but the lower side rails were down. The plaintiff did not use the call cord to summon help but instead got out of bed and headed for the lights in the hallway. After proceeding an unspecified distance in the hallway the plaintiff fell to the floor. A policeman came, picked her up, and carried her back to bed.

As a result of the fall she sustained a fracture of her right hip. The hip could not be operated on as soon as it should have been because of the plaintiff's poor general condition. (The plaintiff's doctors suspected that she might have suffered a second heart attack, but there was no testimony bearing on when it might have occurred.) Partly as a result of the delay the hip never healed properly, and the plaintiff has been unable since that time to walk unaided or without pain.

The manufacturer of Dalmane provides certain warnings with the drug, one of which states: "Dizziness, drowsiness, lightheadedness, staggering, atoxia, and falling have occurred, particularly in elderly or debilitated persons." The hospital has a regulation which reads: "Bedside Rails. With confused or disoriented patients, beds should be in a low position at all times with side rails up, except when nursing care is being given. If patient objects to the side rails being raised, a note to that effect should be included in the nursing notes or the doctor may indicate on the order sheet that he does not want the side rails raised."

The defendant, citing the general rule that, where questions of medical or professional judgment are involved, expert opinion is required to show that the defendant acted improperly (*Tallon* v. *Spellman*, 302 Mass. 179, 183 [1939]; *Riggs* v. *Christie*, 342 Mass. 402, 407 [1961]; *Barrette* v. *Hight*, 353 Mass. 268, 276 [1967]), contends that the plaintiff cannot recover because she failed to introduce expert testimony or evidence that the hospital's employees were negligent in not raising the lower set of bed rails.

There is authority in some jurisdictions for the proposition that a decision whether to raise bed rails involves the expert judgment of the physicians and is therefore beyond the common knowledge of the jury. *Carrigan* v. *Sacred Heart Hosp.*, 104 N.H. 73 (1962). *Mossman* v. *Albany Medical Center*, 34 App. Div. 2d 263 (N.Y. 1970). Other jurisdictions take the view that questions as to the necessity of bed rails do not involve matters of professional diagnosis, treatment, skill or learning but rather concern nonmedical, routine custodial care of the patient, and are therefore within the common knowledge and experience of the jury. *Louie* v. *Chinese Hosp. Assn.*, 249 Cal. App. 2d 774 (1967). *Norris* v. *Rowan Memorial Hosp.*, 21 N.C. App. 623 (1974). *Cramer* v. *Theda Clark Memorial Hosp.*, 45 Wisc. 2d 147 (1969). See generally Annot., 40 A.L.R. 3d 515 (1971).

There are Massachusetts cases in which juries have been permitted to find physicians or other medical practitioners negligent without the assistance of expert opinion testimony. See, e.g., *Toy* v. *MacKintosh*, 222 Mass. 430 (1916); *Gabrunas* v. *Miniter*, 289 Mass. 20 (1935); *Malone* v. *Bianchi*, 318 Mass. 179 (1945); *Lipman* v. *Lustig*, 346 Mass. 182 (1963). "Expert medical testimony is not always essential to proof of negligence or other malpractice of a physician." *Gabrunas* v. *Miniter*, 289 Mass. at 22. "[A]lthough exceptional, the facts in a malpractice case may be such that jurymen of their common knowledge and experience are able to pass on [the] question [of negligence]." *Malone* v. *Bianchi*, 318 Mass. at 182. But no Massachusetts case that we have found has touched on the

necessity for expert testimony concerning the use of bed rails.

We think that the present case does not require us to pass on that question. The hospital regulation is, in a sense, an expert opinion concerning the necessity for raising bed rails in the circumstances to which the regulation applies. It was evidence of what the hospital had determined to be necessary and proper to insure the safety of its patients. *Stevens* v. *Boston Elev. Ry.*, 184 Mass. 476, 480 (1904). "[A] violation of rules previously adopted by a defendant in reference to the safety of third persons has generally been admitted in evidence as tending to show negligence of the disobedient servant for which the defendant is liable." *Clough* v. *New England Tel. & Tel. Co.*, 342 Mass. 31, 36-37 (1961), quoting the *Stevens* case, *supra* at 478. The jury could properly infer that the plaintiff was an elderly person (and perhaps, a "debilitated" person) within the meaning of the Dalmane warning; that she had in fact suffered the symptoms of dizziness and staggering of which the label warned; and that it should have been anticipated by the nurse who gave her the Dalmane pill that there was a reasonable probability that the plaintiff would become confused or disoriented within the meaning of the hospital regulation. From the Dalmane warning and the hospital regulation, without additional medical opinion testimony, the jury could draw an inference that the hospital's nurse had failed to exercise due care when she failed to raise the lower bedrails after administering Dalmane to one in the plaintiff's condition.

The hospital's motion for judgment notwithstanding the verdict was correctly denied, and the judgment on the verdict is affirmed.

*So ordered.*