Swan, J.
The defendant, 90 Exchange LLC (“Exchange”), hired an engineering firm, Cronis, Liston, Nangle & White, LLP (“Cronis”), to provide engineering services for the rehabilitation of a building in Lynn. In a written contract, Cronis agreed to prepare “permit level construction documents (plans with specifications) for the electrical, HVAC and plumbing trades.” The fee for “design phase services” was $37,600.00, with additional fees for engineers’ site visits and “construction phase review.” Asserting that it had performed 85% of the design phase services, Cronis billed Exchange for that percentage of the design services fee, or $31,960.00, plus $840.00 for additional miscellaneous work. Exchange paid $25,000.00, but failed to pay the balance of $7,800.00, for which Cronis sued Exchange in this action for breach of contract.[1] Exchange counterclaimed for breach of contract, breach of warranty, and negligence. The trial court allowed Cronis’ motion for partial summary judgment and dismissed the counterclaims for breach of warranty and negligence on the grounds that Exchange had no engineering expert witnesses to support those claims, only a plumber and an HVAC mechanic. At trial, the court allowed various motions in limine to exclude the same two witnesses proffered by Exchange. After trial, the jury awarded Cronis $7,800.00. Exchange has appealed on the grounds that the court erred in allowing the motion for summary judgment and motions in limine.
1. First, as to the allowance of the motion for summary judgment dismissing the negligence counterclaim[2] against Cronis, we view the evidence in the light most favorable to Exchange, the nonmoving party. Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). Summary judgment may enter only when “there is no gen *79 uine issue as to any material fact and... the moving party is entitled to a judgment as a matter of law.” Mass. R. Civ. R, Rule 56(c). See also DuPont v. Commissioner of Correction, 448 Mass. 389, 397 (2007). In its counterclaim, Exchange alleged that Cronis, as “professional architects and engineers,” had breached its duty of due care, with a “foreseeable and proximate cause of damage” to Exchange. To support this claim, in opposition to Cronis’ Rule 56 motion, Exchange offered an affidavit of its principal and the depositions of its proposed experts, Steven Kipp (“Kipp”) and Peter Riva (“Riva”).[3]
According to Kipp, a journeyman plumber employed by a construction company, Cronis’ “detailed plumbing drawings” “weren’t appropriate” and showed a four-inch sanitary drain pipe “drawn to go through a chimney;” did not show how certain gas, water, and sewer lines ran out to a rear building; indicated a two-inch water line that had to be relocated; failed to show a water pipe that had to be jammed “right between everything else”; had pipes in “plain view thereby destroying [the] integrity [of] ... a ceiling with exposed intricate oak”; had sewer lines “in plain view”; and lacked “drains specified for the pans underneath the water heaters” or “any drawings for gas.” The plans were “probably up to code, but they did not correspond with anything that [Kipp] needed.”
Riva, the holder of a “master’s in plumbing and gas fitting” and employed by Exchange as the project manager for the HVAC mechanics in the Lynn project, testified at his deposition that the plans showed vents going through office spaces and into stairwells; air handler “mechanics hanging in [a] beautiful antique restorable commercial space,” which would also “ruin the integrity of [a partition] wall”; flexion lines to be “buried in ceilings that are concrete” where they cannot be chiseled in; barometric dampers, which only belong on oil appliances, improperly “spaced on gas appliances”; a stack wall incorrectly “designed to accept a pair of four-inch chimneys”; a fresh air intake in a window well so placed as to be sealed by ice and snow; exterior air conditioners mounted on interior walls; apparent duplication of electric heat and forced hot water heat; piping on one floor with no corresponding location on the next floor; and individual ducts making the roof “look like a porcupine.” “ [W] e dismissed these drawings,” Riva testified. “They were that bad.” “By the time we got up there,” he added later, “it was the general consensus that look, let’s stop [sic] from scratch and do it the way we want it done we’ll do it once and do it right and get out of here.”
Characterizing the negligence counterclaim as an action for engineering malpractice, Cronis relied on the following footnote in Atlas Tack Corp. v. Donabed, 47 Mass. App. Ct. 221 (1981):
We emphasize our conclusion that an engineering expert was necessary to prove the plaintiff’s engineering malpractice claim in light of the fact that the issue has not been addressed in any previous Massachusetts appellate *80 decision. We consider this determination consistent with the requirement of expert witness testimony in cases involving other professional fields.
Id. at 227 n.4. Cronis maintained that Kipp and Riva could not be qualified as experts because, in their depositions, they conceded that they had never received education in architecture or engineering or worked directly for an architect or engineer, did not know the standard of care in the design field or for an architect or engineer, and did not consider themselves to be experts in either field. As Kipp and Riva were the only witnesses named by Exchange to establish the breach of Cronis’ standard of engineering care, Cronis argued that there were no experts to support the negligence counterclaim and, thus, Cronis was entitled to judgment on that counterclaim as a matter of law. The motion judge agreed, noting:
Where [Exchange] has not produced testimony from an expert witness that [Cronis’] engineering specs were negligent because not in compliance with the standards of the industry, it is ordered that summary judgment be granted for [Cronis] on Count II (breach of warranty) and Count III (negligence) of [Exchange’s] counterclaim.
Had the negligence counterclaim truly required engineering experts, the judge would have been right. Expert testimony is not necessary, however, when the alleged professional “malpractice is so gross or obvious that laymen can rely on their common knowledge to recognize or infer negligence.” Pongonis v. Saab, 396 Mass. 1005 (1985) (involving legal malpractice). Indeed, “although exceptional, the facts in a malpractice case may be such that jurymen out of their common knowledge and experience are able to pass on this question.” Malone v. Bianchi, 318 Mass. 179, 182 (1945). See Polonsky v. Union Hosp., 11 Mass. App. Ct. 622, 624 (1981). Opposing Cronis’ motion for summary judgment, Exchange rested upon observations by Kipp and Riva of obvious defects understandable by lay persons, such as pipes going through a chimney or failing to continue through an adjoining floor, or individual ducts making the roof “look like a porcupine.” Exchange submitted an affidavit of its principal with computer-generated images of what several spaces would look like if built as designed by Cronis. One showed an HVAC unit or air handler hanging in the middle of a wood paneled room, and two others showed what appears to be inappropriately exposed piping. These alleged defects would need no further explanation.
Other defects may be less noticeable to a layman, such as lack of certain pipe connections, flexion lines buried in concrete, fresh air intakes exposed to sealing by ice or snow, spaces too small to accommodate the necessary piping, or lack of drains for water heater pans. Plumbers and HVAC mechanics like Kipp and Riva are trained, however, to read mechanical drawings, to work from them, and to note their shortcomings. “[T]here are many different kinds of experts, and many different kinds of expertise.” Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999). While not engineers, the witnesses presented by Exchange at least seemed to have the expertise to show how many of these defects were, in fact, obvious.
A judge has wide discretion in qualifying a witness to offer an expert opinion on a particular question.... (Citations omitted.) In qualifying an expert witness, *81 the question for judicial decision is whether the witness has sufficient skill, knowledge, and experience in the area of his training to aid a jury. (Emphasis added.) (Citation omitted.) There is no requirement that testimony on a question of discrete knowledge come from an expert qualified in that subspecialty rather than from an expert more generally qualified (emphasis added) (citation omitted).
Commonwealth v. Mahoney, 406 Mass. 843, 852 (1990). Cronis points to Kipp’s and Riva’s admissions that they did not know the standard of care for engineers or architects and, thus, could not testify to any failure to meet that standard. But if they had sufficient qualifications to indicate what is gross or obvious, then no further expertise should have been needed.
We can well understand how the motion judge concluded that the negligence count was ripe for summary judgment since there were so many items identified by Kipp and Riva, and some of those could, in fact, have required an engineering expert in accordance with Atlas Tack Corp., supra. For example, only an engineer may have the requisite qualifications to explain why barometric dampers cannot be placed on gas appliances, or why electric and forced hot water heat cannot be combined, or why certain air conditioners cannot be placed inside. But when viewed across their entire landscape, the design defects alleged by Exchange actually fall into three categories: those that may require an expert, those that are so gross or obvious as to need no expert whatever, and those that could be made obvious when pointed out by someone skilled in a building trade, like Kipp or Riva. In allowing summary judgment, the court below grouped these categories together and concluded that they all required expert engineering testimony, when many did not. The issues were best left for trial, first by the judge and then by the jury:
Once the judge makes a preliminary finding that a witness is qualified to render expert opinion, ... the jury may continue to evaluate the witness’s qualifications. The jury’s function, vis-a-vis an expert witness, is to assess the soundness and credibility of his opinions. The jury is entitled to discount, or disbelieve, the expert’s testimony. (Citations omitted.) One factor in assessing the strength of expert testimony is the expert’s knowledge and experience. A jury may properly evaluate that knowledge and experience in deciding what weight to give the opinion when reaching a final decision.
Leibovich v. Antonellis, 410 Mass. 568, 573 (1991). “The judge thus has a gatekeeper role. Of course, if the judge rules the opinion evidence admissible, that ruling is not final on the reliability of the opinion evidence, and the opponent of that evidence may challenge its validity before the trier of fact.” Commonwealth v. Lanigan, 419 Mass. 15, 26 (1994).[4] Taken as a whole, the design defects alleged by Exchange raised questions of fact, and the motion for summary judgment should have been denied. *82 We, accordingly, reverse the court’s entry of summary judgment on the negligence counterclaim.
2. Without that count, the case went to trial on a claim and a counterclaim for breach of contract. Again, Exchange sought to offer the testimonies of Kipp and Riva, and Cronis was again successful in excluding them in a series of motions in limine.[5] The trial judge concluded that “because the Court has previously ruled [on Cronis’ motion for summary judgment] that those issues did not satisfy the issue of negligence, therefore they’re also barred under any other argument because again the Court feels that in order to get to the breach of contract you first have to deal with negligence and since negligence has been taken away..., it nullifies this issue of breach of contract.” The prior ruling on the summary judgment motion, in other words, mandated exclusion of the witnesses. For the reasons stated, we have found that the prior ruling was erroneous, and that the negligence count should have been held for trial, with the judge deciding on which issues Kipp and Riva had the qualifications to opine, and the jury weighing their credibility.
But the admissibility of their testimony rests on another ground as well. The counterclaim that went to the jury, as noted, was for breach of contract. The contract called for “permit level construction documents (plans with specifications) for the electrical, HVAC and plumbing trades“ (emphasis added). In other words, the plans were to be drawn so that they could be used by tradesmen — plumbers and HVAC technicians, i.e., like Kipp and Riva. And it was those very tradesmen who, for the defects they cited, could not use them. The plans “did not correspond with anything that [Riva] needed,” and, according to Kipp, “it was the general consensus ... [to start] from scratch” — the plans “were that bad.” If the plans could not be used by those for whom they were designed, then Cronis had not performed its obligations under the contract, thus excusing further performance, i.e., payment, by Exchange, Lease-It, Inc. v. Massachusetts Port Auth., 33 Mass. App. Ct. 391, 396 (1992). The issue should have been given to the jury to decide.
Cronis maintained at oral argument that it was obligated under the contract to produce only “permit level construction documents.” So, its argument goes, if the drawings resulted in the issuance of a building permit, which Cronis’ counsel stated was obtained from the city of Lynn, Cronis has performed. But the contract provided that the drawings were to be for the trades. That can mean only usable by the trades. A “contract is to be construed to give a reasonable effect to each of its provisions if possible... [and] should be construed so as to give it effect as a rational business instrument and in a manner which will carry out the intention of the parties” (citation omitted). McMahon v. Monarch Lye Ins. Co., 345 Mass. 261, 264 (1962). To *83 suggest, as Cronis seems to, that it could get paid for producing plans that could somehow win a permit and be otherwise useless to its intended users contravenes the very purpose of the contract.
Riva and Kipp were appropriate witnesses for Exchange’s breach of contract counterclaim and should have been allowed to testify subject to the judge’s gatekeeping role. Without them, Exchange could not prove its case.
The judgment for the plaintiff on both the complaint and counterclaims is vacated, the allowance of the plaintiffs motions for summary judgment and in limine are reversed, and the action is returned to the Salem Division for a new trial.
So ordered.

 The complaint also named as a defendant Jonathan Bedard, a principal of Exchange. He was dismissed from the suit prior to trial.

 Cronis correctly notes in its brief that, as to the entry of summary judgment, Exchange appeals only the court’s decision dismissing the negligence count. There is no appeal on the breach of warranty count, and it is deemed waived.

 It is unclear from the record before us exactly what portion of these depositions was before the motion judge. At trial, Exchange’s counsel seemed to suggest that the transcripts of the depositions had been presented to the motion judge in their entirety. In any event, the transcripts, unabridged, have been included in the record appendix without objection from Cronis, and we thus consider them.

 The gatekeeping role would have empowered the trial judge, who was not the motion judge, to determine on which issues the witnesses could testify. As noted below, the trial judge felt that the question had been adjudicated by the motion judge and, thus, did not exercise that role.

 There were four motions in all: (1) to preclude testimony regarding the sufficiency of the plans, (2) to preclude expert testimony of Riva, Kipp, and Christian Dorr, (3) to exclude evidence regarding the design of air handlers, and (4) to preclude any testimony of Riva, Kipp, and Christian Dorr. The trial court allowed the first three, and took no action on the fourth. Christian Dorr was another plumber who was deposed, but whose testimony was not offered by Exchange either in opposition to the motion for summary judgment, or at trial.