NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-733

WILLIAM SNYDER

vs.

MASSACHUSETTS GENERAL HOSPITAL & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff brought medical malpractice claims in the Superior Court against three physicians and Massachusetts General Hospital (MGH).[2]  A medical malpractice tribunal concluded, based on the plaintiff's offer of proof, that the plaintiff's injuries were "merely an unfortunate medical result" and were not "sufficient to raise a legitimate question of liability appropriate for judicial inquiry."  The Superior Court

---

[1] Darshali A. Vyas, Jose C. Florez, and Allen P. Heeger.

[2] The plaintiff's complaint alleges that the three physicians were medically negligent and that MGH was "vicariously liable . . . as the employer of the other defendants and of hospital staff who were acting within the scope of their agency."

judge dismissed the claims after the plaintiff failed to post the statutory bond, and the plaintiff now appeals.[3]  We affirm.

Background.  The plaintiff filed this suit in 2023, based on injuries he suffered in a fall at MGH after radiologist Allen P. Heeger, D.O., ordered that two nitroglycerin patches be administered to him.  As relevant to this appeal, the plaintiff alleged that Heeger was negligent in failing to notify him and the nurses caring for him that the patches created a risk that the plaintiff "would be susceptible to syncope upon rising from his hospital bed."[4]

A medical malpractice tribunal convened in February 2025, and the plaintiff submitted an offer of proof consisting of a brief and several exhibits:  copies of the plaintiff's medical records; letters between the plaintiff and Jana B. Deen, R.N., J.D., associate chief and patient safety officer at MGH (Deen) about MGH's investigation into the incident, including attached reports prepared by MGH for the Department of Public Health; an

---

[3] The docket reflects that the plaintiff voluntarily dismissed his claims against physicians Darshali A. Vyas and Jose C. Florez before the tribunal hearing took place.  The plaintiff has not made any argument on appeal regarding either Vyas or Florez, and neither Vyas nor Florez filed a brief in this appeal.

[4] As we have noted, the plaintiff also alleged that MGH was vicariously responsible for Heeger's negligence.

2

information sheet for the nitroglycerin patches administered to the plaintiff; excerpts from Heeger's responses to the plaintiff's requests for admissions; guidelines for prevention of falls; photographs of the plaintiff's hospital room and injury; and the plaintiff's affidavit. Notably, it did not include any letter or report from a medical expert to establish the standard of care or to opine that any of the defendants deviated from the applicable standard of care in their treatment of the plaintiff.

The tribunal ultimately concluded that the plaintiff's offer of proof did not present evidence "sufficient to raise a legitimate question of liability appropriate for judicial inquiry" as to either Heeger or MGH. When the plaintiff failed to post the statutory bond of $6,000 necessitated by the tribunal's ruling, see G. L. c. 231, § 60B, the Superior Court judge dismissed the plaintiff's case. This appeal followed.

Discussion. The plaintiff in a medical malpractice action must present the medical malpractice tribunal with an offer of proof "sufficient to raise a legitimate question of liability appropriate for judicial inquiry." G. L. c. 231, § 60B. A plaintiff's offer of proof meets this standard if it "presents sufficient evidence that (1) the defendant is a health care provider as defined in § 60B; (2) the defendant's performance

3

did not conform to good medical practice; and (3) damage resulted therefrom" (quotations and citations omitted). Bennett v. Collins, 496 Mass. 737, 742 (2025). When we assess the evidence presented by an offer of proof, we apply "a standard comparable to a motion for a directed verdict," and view the evidence in the light most favorable to the plaintiff. Id.

Notwithstanding the favorable standard of review, we conclude that the plaintiff failed to make the required showing before the tribunal. This is primarily because the plaintiff's offer of proof failed to establish that the defendants' performance "did not conform to good medical practice." Bennett, 496 Mass. at 742, quoting Kapp v. Ballantine, 380 Mass. 186, 193 (1980). In the medical malpractice context, "[t]he relevant standard of care is the one that applies to 'the average qualified physician in his or her area of specialty,'" Goudreault v. Nine, 87 Mass. App. Ct. 304, 308 n.9 (2015), quoting Medina v. Hochberg, 465 Mass. 102, 106 (2013). "This question can generally only be answered with the aid of expert opinion." Goudreault, supra. That is the case here.

In his brief to the tribunal, the plaintiff "decided to rely on MGH's own expert investigation" and on information about the nitroglycerin patches, rather than employing an expert witness. We assume without deciding that (1) the letters from

4

Deen to the plaintiff and (2) the reports prepared by an MGH "compliance specialist" for presentation to the Department of Public Health were admissible at the tribunal hearing.  But see G. L. c. 12C, § 15 (e).  The record does not establish that either Deen, as the author of the letters to the plaintiff, or the compliance specialist who prepared MGH's mandatory report of the plaintiff's fall as a "Serious Reportable Event" had "sufficient 'education, training, experience and familiarity' with" the "proper standard of care" to define that standard or to opine on whether the defendants deviated from it.  See Palandjian v. Foster, 446 Mass. 100, 106 (2006), quoting Letch v. Daniels, 401 Mass. 65, 68 (1987).

Moreover, neither Deen nor the compliance officer provided an opinion on the standard of care or whether the defendants adhered to it.  Neither Deen's statement that MGH had been given "the opportunity to review and improve" its practices after investigating the plaintiff's fall nor the compliance officer's statement in the final report that "[w]e believe [the plaintiff's fall and injury] was likely preventable" was evidence that the care provided to the plaintiff was substandard.  It does not necessarily follow that a "preventable" injury was the result of negligence.  See Paiva v. Kaplan, 99 Mass. App. Ct. 645, 649 (2021), quoting Palandjian,

5

446 Mass. at 105 ("As the basis for the standard of care rests on the average qualified physician, or specialist, 'this standard does not require physicians to provide the best care possible'").  Cf. Bradford v. Baystate Med. Ctr., 415 Mass. 202, 207 (1993) (where plaintiff's expert report did not state that defendant failed to adhere to accepted medical practice, expert's statement implying that negative outcome may have been avoidable was insufficient to meet standard applicable to medical malpractice tribunal).

This is not one of the "exceptional cases" in which a lay person could rely on "common knowledge and experience" to identify the standard of care and determine whether the defendants deviated from it.  Haggerty v. McCarthy, 344 Mass. 136, 139 (1962), quoting Bouffard v. Canby, 292 Mass. 305, 309 (1935).  Whether the standard of care required the average qualified radiologist to provide additional fall warnings to the plaintiff or the nurses caring for him after ordering the application of two nitroglycerin patches is not within the knowledge of an average lay person.  Indeed, the plaintiff's complaint and offer of proof made this point by highlighting that a number of factors, related to his situation and the particular medication administered, increased the likelihood

6

that the medication led to the dizziness that caused him to fall and injure his hand.

The decision in Polonsky v. Union Hosp., 11 Mass. App. Ct. 622 (1981), cited in the plaintiff's brief, does not require a different result. In that case, a nurse caring for an eighty year old patient administered a medication whose manufacturer warned it could cause "[d]izziness, drowsiness, lightheadedness, staggering, atoxia, and falling . . . , particularly in elderly or debilitated persons," but the nurse failed to comply with a "hospital regulation" requiring side rails to be raised "at all times" for "confused or disoriented patients," and this court held that the hospital regulation constituted "an expert opinion concerning the necessity for raising bed rails" in those circumstances. Id. at 623, 625. Here, the defendant was already subject to fall protection measures when the medication was administered, and there was no evidence that any of his caregivers failed to adhere to any "hospital regulation" in place at the time of the fall that might have protected against his injury.[5]

---

[5] The plaintiff's offer of proof did not include "[t]he MGH rules before and after [the plaintiff's] injury regarding pre-exam drug administration and fall safety." Even if MGH had changed its regulations in response to the plaintiff's fall, those subsequent remedial measures could not be used to prove negligence. See Martel v. Massachusetts Bay Transp. Auth., 403 Mass. 1, 4-5 (1988); Mass. G. Evid. § 407(a) (2026). Similarly,

7

Because the plaintiff's offer of proof lacked an expert opinion identifying the applicable standard of care and "how each defendant 'failed to adhere to [it],'" the offer of proof "[fell] short of raising a legitimate question of liability appropriate for judicial inquiry as to each defendant.  The plaintiff's offer of proof accordingly was insufficient."  See DosSantos v. Beth Israel Deaconess Hosp.-Milton, Inc., 497 Mass. 34, 44-45 (2026), quoting Bradford, 415 Mass. at 206.  Accordingly, we affirm the tribunal's finding and the judgment of dismissal.

Judgment affirmed.

By the Court (Henry, Hand & Allen, JJ.[6]),

Clerk

Entered:  April 21, 2026.

---

the plaintiff has failed to persuade us that MGH's decision not to charge the plaintiff for services related to the fall and injury was an admission of responsibility that could be used to prove liability.  See Gallo v. Veliskakis, 357 Mass. 602, 606 (1970); Mass. G. Evid. § 409(b) (2026).

[6] The panelists are listed in order of seniority.

8