JAMES M. JASPER & another[1] vs. PETER P. TOMAIOLO.

Worcester. February 12, 1985. — June 13, 1985.

Present: DREBEN, KAPLAN, & WARNER, JJ.

*Evidence*, Expert opinion. *Medical Malpractice*, Evidence before tribunal.

The tribunal in a medical malpractice case should not have considered a
transcript of the testimony of two physicians in an unrelated civil action,
since such transcripts do not qualify as an acceptable source of evidence
under G. L. c. 231, § 60B. [202-205]

CIVIL ACTION commenced in the Superior Court Department
on March 19, 1984.

After consideration of the case by a medical malpractice
tribunal, a motion to strike the tribunal's finding was heard by
*William C. O'Neil, Jr., J.*

A motion for an interlocutory appeal, filed in the Appeals
Court, was allowed by *Grant, J.*

*Robert V. Deiana* for the defendant.

*John F. Keenan* (*Hugh B. O'Malley* with him) for the plain-
tiffs.

DREBEN, J. At the medical malpractice tribunal convened
pursuant to G. L. c. 231, § 60B, the plaintiffs' offer of proof
included partial transcripts of the testimony of two physicians
in an unrelated civil action. After the tribunal determined, in
accordance with the statute, see note 4, *infra*, that "the evidence
presented if properly substantiated is sufficient to raise a legiti-
mate question of liability appropriate for judicial inquiry," the
defendant moved in the Superior Court to strike that determi-
nation. The motion was denied, and a single justice of this
court allowed the defendant to take an interlocutory appeal.

---

[1] Maureen E. Jasper.

The sole question before us is the propriety of the tribunal's consideration of testimony adduced at an unrelated trial.[2] We hold that the transcripts do not qualify as an acceptable source of evidence under G. L. c. 231, § 60B.

The complaint alleged that the defendant was negligent in treating the plaintiff James M. Jasper by failing to disclose that one of the risks of the drug Prednisone is that it may cause osteonecrosis of the hips, that the defendant was aware or should have been aware of this risk, and that as a result of James' use of the drug he suffered osteonecrosis of both hips.

The partial transcripts were introduced to satisfy the requirement of *Harnish* v. *Children's Hosp. Medical Center*, 387 Mass. 152, 156 (1982): in nondisclosure cases, "[w]hat the physician should know involves professional expertise and can ordinarily be proved only through the testimony of experts." The excerpts included the partial testimony of Dr. Barry Fisherman, an ophthalmologist. He stated that the risks of the drug known as systemic Prednisone included "asceptic necrosis," which he defined as "a wearing away, or destruction of the joints, of the bones."

The second physician, Dr. Melvin W. Kramer, an internist, stated that a complication of systemic Prednisone is asceptic necrosis, that the drug is used in all specialties of medicine, and that the "drug is a standard drug which has been expounded upon in detail in the medical school, and the details of the pharmacology and effects, side effects of this medicine, are made known to every physician who obtains a diploma from medical school." Dr. Kramer also pointed out that the side effects of the drug depend on the individual sensitivities of the patient — "the particular characteristics of that patient's system prior to taking it, plus the duration of treatment and the intensity of treatment, how much is given for how long."

---

[2] In addition to the challenged transcripts, the offer of proof contained hospital records, an affidavit of James Jasper, and two pages of the 1980 edition of Physicians' Desk Reference. No claim has been made that these items, without the transcripts, could support a favorable determination, nor would such a claim be appropriate. The offer of proof must first be screened by a tribunal. *Broadard* v. *Hubbard Regional Hosp.*, 388 Mass. 1012 (1983).

In refusing to strike the finding of the tribunal, the judge ruled that the portions of the transcript "did not appear to the tribunal to be addressed to the [named] plaintiff [in that case] . . . . but rather to apply to physicians generally and patients generally." He held the testimony to be "analogous to a medical journal article or a statement in a medical text" of the type specifically permitted under G. L. c. 231, § 60B.[3]

That statute, set forth in relevant part in the margin,[4] gives examples, but does not limit the kinds of evidence which may be introduced, and the standard for the admission of expert testimony before a medical malpractice tribunal is "extremely lenient." *Halley* v. *Birbiglia*, 390 Mass. 540, 543 n.4 (1983).

There is a standard, nonetheless. The plaintiffs' bare allegations may not be accepted as sufficient, but rather "evidence" is to be presented to the tribunal. Its task has been "compared . . . to the trial judge's function in ruling on a defendant's motion for directed verdict." *Little* v. *Rosenthal*, 376 Mass. 573, 578 (1978). Expert testimony must be accepted "if the offer of proof is sufficient to show that a trial judge in his discretion *might properly rule* that the qualifications of the witness are sufficient." *Kapp* v. *Ballantine*, 380 Mass. 186, 192 (1980) (emphasis original). *Kapp* thus establishes that

---

[3] The judge in a footnote mentioned that the tribunal discussed the advance warning requirement of G. L. c. 233, § 79C. No claim is made here relating to that requirement.

[4] General Laws c. 231, § 60B, inserted by St. 1975, c. 362, § 5, provides in relevant part: "Every action for malpractice, . . . shall be heard by a tribunal . . . . at which hearing the plaintiff shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry. . . ."

"Each such action for malpractice shall be heard by said tribunal within fifteen days after the defendant's answer has been filed. Substantial evidence shall mean such evidence as a reasonable person might accept as adequate to support a conclusion. Admissible evidence shall include, but not be limited to, hospital and medical records, nurses' notes, x-rays and other records kept in the usual course of the practice of the health care provider without the necessity for other identification or authentication, statements of fact or opinion on a subject contained in a published treatise, periodical, book or pamphlet or statements by experts without the necessity of such experts appearing at said hearing."

evidence which might be admissible at trial must be accepted. We need not reach the question whether expert testimony which does not meet that standard may nevertheless be considered by a tribunal.[5]

Even if we accord the proffered expert testimony every lenity, we do not think it has the indicia of reliability required for a hearing before a medical malpractice tribunal. An expert "cannot give an opinion unless it is properly based on the particular facts in dispute." Liacos, Massachusetts Evidence 114 (5th ed. 1981). See *Gugino* v. *Harvard Community Health Plan*, 380 Mass. 464, 468 (1980) (tribunal). Not only is it obvious that neither doctor was familiar with Jasper's condition,[6] but the testimony of Dr. Kramer itself revealed that the side effects and, hence, the risks, of the drug depend on the "particular characteristics" of the patient, the dosage, and the duration of treatment.

The transcript of expert testimony from another trial does not have the characteristics of learned treatises. The latter are subjected to careful professional criticism and are not made with an eye to litigation. See generally, 6 Wigmore, Evidence § 1691-1692 (Chadbourn rev. 1976). Moreover, despite the existence of G. L. c. 233, § 79C, a statute allowing the admission of medical treatises, their use in Massachusetts is "significantly restricted." See Liacos, op. cit. at 109; Kehoe, Massachusetts Malpractice Evidentiary Statute — Success or Failure? 44 B.U.L. Rev. 10 (1964). See also *Girard* v. *Crawford*, 13 Mass. App. Ct. 916, 916-917 (1982).

We think the reasoning of *United States* v. *Jones*, 712 F.2d 115, 121 (5th Cir. 1983), applies to hearings before the tribunal.

---

[5] See the reference to "[s]ubstantial evidence" in § 60B, note 4, *supra,* using language similar to that of G. L. c. 30A, § 1(6). But see *Girard* v. *Crawford*, 13 Mass. App. Ct. 916, 917 (1982) (no evidence before the tribunal on which the judge could properly have ruled that "the medical treatise [if it is that] relied on by the plaintiff . . . but not referred to by the supposed expert, would be admissible at trial" under G. L. c. 233, § 79C).

[6] We also note that the doctors spoke of "asceptic necrosis" while the plaintiff alleged that he suffered from "osteonecrosis." No testimony indicated that both conditions are the same.

The court there held that the learned treatise doctrine is "confined to published works that have been subjected to widespread collegial scrutiny" and is not to be extended to allow admission of prior testimony, from an unrelated trial, of another expert. The element of trustworthiness inherent in the learned treatise exception is, in such circumstances, lacking.

Since the tribunal's decision was based in part on evidence which should not have been considered, the action is remanded to the Superior Court to strike the tribunal's determination and to allow the plaintiffs to make a new offer of proof.[7]

*So ordered.*

---

[7] In view of the tribunal's determination in the plaintiffs' favor and the novel question presented, we do not believe the plaintiffs should be limited to their prior offer of proof. See note 2, *supra*. We note that, in any event, the tribunal may, on its own, seek additional testimony. See G. L. c. 231, § 60B.