Lucas v. Collins.

LINDAMAE LUCAS *vs.* DANIEL J. COLLINS, JR.

No. 99-P-75.

Essex. January 12, 2001. - February 22, 2001.

Present: GREENBERG, GILLERMAN, & RAPOZA, JJ.

*Medical Malpractice,* Tribunal, Appeal, Standard of care, Expert opinion. *Negligence,* Doctor, Medical malpractice, Standard of care, Expert opinion. *Practice, Civil,* Offer of proof. *Doctor.*

In a medical malpractice action, the plaintiff's offer of proof was sufficient to raise a legitimate question of liability appropriate for judicial inquiry. [33-34]

CIVIL ACTION commenced in the Superior Court Department on September 5, 1997.

An order of dismissal was entered by *Peter F. Brady,* J.

*Daniel Malis* for the plaintiff.

*Curtis R. Deidrich* for the defendant.

GREENBERG, J. A medical malpractice tribunal convened by the Superior Court found that Lindamae Lucas, the plaintiff, had experienced an unfortunate medical result, i.e., that the evidence presented to the tribunal, if properly substantiated, was not "sufficient to raise a legitimate question of liability appropriate for judicial inquiry" under G. L. c. 231, § 60B, inserted by St. 1975, c. 362, § 5. Thus, in order to maintain her action, the plaintiff had to file with the court a bond in the amount of six thousand dollars within thirty days of the finding. See G. L. c. 231, § 60B, as amended through St. 1986, c. 351, § 21. Upon the plaintiff's failure to post the required bond, a judgment of dismissal of the complaint entered on October 13, 1998, from which she now appeals. See *McMahon* v. *Glixman,* 379 Mass. 60, 63-64 (1979).

Under the directed verdict standard applicable to § 60B offers of proof, we examine the evidence indulgently in favor of the plaintiff, see *Booth* v. *Silva,* 36 Mass. App. Ct. 16, 23 (1994);

*Nickerson* v. *Lee*, 42 Mass. App. Ct. 106, 109-111 (1997), and without regard to weight or credibility. See *Keppler* v. *Tufts*, 38 Mass. App. Ct. 587, 589 (1995). Against this background of principles, the following circumstances emerge. On September 9, 1994, the defendant, Dr. Daniel J. Collins, Jr., performed upon the plaintiff a laparoscopic cholecystectomy — in common parlance, a gall bladder removal. As a routine step, the defendant disconnected from the gall bladder a blood vessel known as the cystic artery. According to his notes, he "identified" the artery and then "controlled" it, accomplishing the latter by clamping "hemoclips" on the vessel before severing it. He next removed the gall bladder itself using an electrocautery, a surgical instrument that electrically sears tissue. The defendant's notes state that "[n]o untoward bleeding . . . was encountered." An hour after the surgery, however, the plaintiff developed signs of acute and severe blood loss, necessitating a second surgery to halt internal hemorrhaging and to evacuate a large quantity of blood that had flowed into the abdominal cavity. The defendant identified the source of the bleeding as a second "branch of the cystic artery which had apparently been cauterized and not clipped at the time of the initial cholecystectomy. The [resulting] coagulum[1] had apparently stayed in place for about an hour and then blown off with brisk hemorrhage. [The plaintiff] proved to have a very short cystic artery, which had bifurcated." The defendant concedes that this second arterial branch, described in his notes as "large" and as located "adjacent to intact hemoclips" on the first branch, was not identified during the first surgery and became cauterized at that time without his knowledge.[2]

Stripped of detail, the plaintiff's malpractice claim before the tribunal was that the defendant deviated from the standard of

---

[1]The term refers to a coagulated mass of blood — i.e., a clot. See American Heritage Dictionary 362 (3rd ed. 1992).

[2]In his brief, defense counsel wrote that "the record supports the argument that Dr. Collins clipped one branch of the cystic artery, and mistakenly cauterized a second branch of the cystic artery. This second branch of the cystic artery was not recognized until the [second] procedure." At oral argument, defense counsel stated, "there's no dispute here that there was an ancillary branch that was not identified, that was cauterized mistakenly." We do not adopt the plaintiff's view that the use of the word "mistakenly" is an admission of negligence; for purposes of decision, we take the meaning to be that Dr. Collins unintentionally and unknowingly cauterized the second artery branch.

care in two respects — in failing properly to control bleeding from the cystic artery and in failing to inspect adequately for arterial bleeding at the completion of the surgery. Although the tribunal did not (and was not required to) specify its reasons for finding the plaintiff's evidence inadequate, the record, briefs, and oral argument before us reveal the pivotal issue to be whether the offer of proof was sufficient with regard to the standard of care and its breach.

On this point, the plaintiff's case centered on the three page opinion letter of Dr. Arnold S. Rosenbaum, a general surgeon who had formed his opinions after a review of the plaintiff's medical records, including the defendant's notes summarized above. Detailing the factual history, Dr. Rosenbaum referred to the source of the bleeding as "a large branch of the cystic artery which was cauterized but not clipped at the time of the first surgery. This was adjacent to an intact hemoclip."[3] Later, Dr. Rosenbaum opined that "Dr. Collins, in failing to appropriately triple clip (or double clip at minimum[)] the cystic artery, allowed the patient to have a massive postoperative bleed requiring a second surgical procedure . . . . The breach in the standard of care in this instance was a failure to adequately initially control the cystic artery with hemoclips . . . ."[4]

As the defendant points out, Dr. Rosenbaum's letter did not specifically distinguish between the two branches of the cystic artery with respect to the alleged failure to hemoclip. Thus, if

---

[3]The defendant, focusing on the usage of the singular word "hemoclip," argues that Dr. Rosenbaum's opinion should be disregarded as resting on the erroneous factual basis that only one hemoclip was used during the first procedure. Although this is one possible reading of the letter, it is not the only reasonable one. Doctor Rosenbaum's reference to the second branch's location as "adjacent to an intact hemoclip" may have been intended only to describe proximity, and would be literally correct even if multiple clips were present, one closer to the second branch than the other. Doctor Rosenbaum also noted that, during the second surgery, "[t]he cystic artery was also doubly clipped with hemoclips once again," suggesting an awareness of the use of multiple clips during the first surgery.

[4]Omitted from the end of the quoted passage is the second theory of breach, "the failure at the conclusion of the procedure to adequately inspect the cystic artery for absence of bleeding . . . ." In light of our ultimate conclusion, we do not pass on the second theory because "the tribunal's function under § 60B is limited to the ascertainment whether the offer of proof is sufficient as to any one of the theories." *Kapp* v. *Ballantine*, 380 Mass. 186, 192 (1980). See *Heyman* v. *Knirk*, 35 Mass. App. Ct. 946, 948 (1994).

the alleged negligence was in the failure to observe the second branch of the artery and place hemoclips at that site, Dr. Rosenbaum did not explicitly state that the branching was something a surgeon exercising due care should have identified during the first procedure, rather than an anomalous anatomical configuration that was not reasonably detectable before the massive hemorrhage.

Placed in context, however, we do not think this shortcoming renders the result fatally deficient. Our conclusion is based on the governing principle found in the cases that an offer is sufficient if "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *St. Germain* v. *Pfeifer*, 418 Mass. 511, 516 (1994), quoting from *Dobos* v. *Driscoll*, 404 Mass. 634, 656, cert. denied sub nom. *Kehoe* v. *Dobos*, 493 U.S. 850 (1989). "[A] plaintiff's expert need not state his opinion in formulaic terms," *Nickerson* v. *Lee*, 42 Mass. App. Ct. at 111, and a direct statement of the standard of care is not needed if "[t]he wrongs to which the language of the expert opinion letter speaks implicitly show how the defendant committed a breach of the standard of care owed to his patient." *Ibid.*

Read indulgently, Dr. Rosenbaum's letter reasonably can be viewed as setting forth a fixed standard of care that required the defendant to adequately control the bleeding from the cystic artery, including any and all branches. The use of hemoclips — doubly or triply where placed — appears to be the proper method for accomplishing this end. Thus, his point may be taken to be that, by not placing hemoclips so as to control the second artery branch during the first surgery, the defendant failed to complete the procedure. See *Rahilly* v. *North Adams Regional Hosp.*, 36 Mass. App. Ct. 714, 719 (1994) (adopting reasonable meaning, open to jury, of expert's letter). To require a more finely tuned expert opinion, i.e., an express statement of the standard of care with respect to the detection of a "very short cystic artery, which had bifurcated," is to demand a level of specificity that, in our view, contravenes the liberal standard of the case law. Whether the apparently broad and demanding standard articulated by Dr. Rosenbaum is the proper one is an issue to be determined by the trier of fact aided by expert witnesses. We conclude only that the offer of proof here compares favorably to those found sufficient in other cases. See,

e.g., *Kapp* v. *Ballantine*, 380 Mass. 186, 193-194 (1980); *Blake* v. *Avedikian*, 412 Mass. 481, 484 (1992); *Bradford* v. *Baystate Med. Center*, 415 Mass. 202, 207 n.6 (1993); *Mataitis* v. *St. Goar*, 416 Mass. 325, 326-327 (1993); *DiNozzi* v. *Lovejoy*, 20 Mass. App. Ct. 973, 973-974 (1985); *Lambley* v. *Kameny*, 43 Mass. App. Ct. 277, 286-287 (1997).

The judgment dismissing the plaintiff's claim against the defendant is vacated. The matter is remanded to the Superior Court where the tribunal's decision is to be struck and, in substitution therefor, a determination shall be entered that the offer of proof by the plaintiff is sufficient to raise a legitimate question of liability appropriate for judicial inquiry.

*So ordered.*