JOSEPHINE COOPER, executrix,[1] *vs.* ANN COOPER-CICCARELLI.

No. 09-P-1267.

Hampshire. April 6, 2010. - June 22, 2010.

Present: KATZMANN, MEADE, & SIKORA, JJ.

*Medical Malpractice,* Tribunal, Bond, Expert opinion, Standard of care. *Negligence,* Medical malpractice, Doctor, Standard of care, Expert opinion. *Doctor. Practice, Civil,* Offer of proof.

Discussion of the role of a medical malpractice tribunal in evaluating the sufficiency of a plaintiff's offer of proof in a medical malpractice action. [90-91]

In a medical malpractice action brought by the executrix of the decedent's estate against the defendant physician and others, a medical malpractice tribunal in its report properly determined only that the plaintiff's offer of proof was insufficient to raise a legitimate question of liability appropriate for judicial inquiry, and did not consider the apportionment or ultimate determinations of liability [91-92]; moreover, there was no merit to the claim that the tribunal, in determining that the offer of proof was fatally deficient, did not give proper consideration to the opinion report submitted by the plaintiff's expert, where that report assumed facts that were not rooted in the evidence [92-94].

CIVIL ACTION commenced in the Superior Court Department on November 26, 2008.

A motion to dismiss was heard by *Mary-Lou Rup,* J.

*Enrico M. De Maio* for the plaintiff.

*Richard W. Jensen* for the defendant.

MEADE, J. The plaintiff, as the executrix of the estate of her late husband, appeals from the dismissal of her medical malpractice action for failing to post a bond after an adverse decision of a medical malpractice tribunal. See G. L. c. 231, § 60B. The plaintiff claims that the tribunal erred in determining that the plaintiff's offer of proof relative to the defendant,

---

[1] Of the Estate of Irving Cooper.

Ann Cooper-Ciccarelli, D.O., an osteopath, was not sufficient to raise a legitimate question of liability appropriate for judicial inquiry. We affirm.

1. *Prior proceedings.* The plaintiff commenced this action against three physicians, the defendant, Dr. Andrew Ciccarelli, Dr. Zubin D. Irani, and the Cooley Dickinson Hospital in North-ampton. With respect to the defendant, the complaint alleged that as a result of the defendant's negligence in failing to order additional x-rays because the initial x-ray was not of sufficient quality to adequately diagnose the condition of the plaintiff's decedent, Irving Cooper. According to the complaint, Cooper became "paralyzed and suffered serious bodily injuries, great pain of body and mind, incurred medical expense[s] and death." Based upon these allegations, the plaintiff brought claims against the defendant and doctors Ciccarelli and Irani for wrongful death, and conscious pain and suffering. The plaintiff also asserted a claim based on respondeat superior against the hospital. Each of the defendants denied the allegations in their respective answers.

Pursuant to G. L. c. 231, § 60B, the Superior Court convened a medical malpractice tribunal. Prior to the tribunal proceeding, the plaintiff submitted her offer of proof as the statute requires. After hearing arguments, the tribunal issued reports relative to each defendant. With respect to Ciccarelli, Irani, and the hospital, the tribunal determined that the plaintiff's offer of proof, if properly substantiated, was sufficient evidence to raise a legitimate question of liability appropriate for judicial inquiry. However, as to the defendant, the tribunal determined that the evidence presented was not sufficient. After the plaintiff failed timely to post a bond in order to pursue her claims against the defendant, the complaint was dismissed on the defendant's motion, and a separate and final judgment entered in her favor.

2. *The allegations.*[2] On July 18, 2007, suffering from severe back pain, seventy-nine year old Irving Cooper went to the emergency room at Cooley Dickinson Hospital. The defendant was the attending emergency room physician who was charged with Cooper's care upon his admission. Cooper reported that

---

[2]The facts recited are taken from the plaintiff's offer of proof and they are assumed to be true for purposes of our review.

the onset of back pain resulted from his lifting groceries out of his car and later was worsened by a fall in his bathtub three days later. The bathtub fall did not involve Cooper hitting his head, neck or back, but he complained that his pain was a "ten on a scale of ten." The defendant performed a physical examination, ordered an x-ray of his thoracic spine, and ordered four milligrams of intravenous morphine to alleviate Cooper's pain.

The x-ray films of Cooper's thoracic spine were interpreted by Dr. Ciccarelli, the on-duty radiologist. Dr. Ciccarelli noted what appeared to be a compression fracture deformity at T5. He found that the vertebral body heights and disc spaces were otherwise maintained. Dr. Ciccarelli did note that Cooper had minimal end plate spurring in the lower thoracic spine, but that he had no destructive changes. In the end, Dr. Ciccarelli reported that Cooper's x-rays indicated that his paravertebral soft tissues were unremarkable.

The defendant discussed Dr. Ciccarelli's radiological findings with Dr. Irani, an interventional radiologist. Dr. Irani advised Cooper to follow up with him after his discharge to undergo an injection vertebroplasty to reduce his back pain. No further radiological studies were ordered. The defendant prescribed Cooper pain medication and a walker in the event he had ambulatory difficulties. Cooper was discharged from the hospital against the wishes of his family.

Over the course of the next two days, Cooper continued to suffer from extreme back pain. He also began experiencing numbness in his toes and legs, difficulty breathing and urinating, and ultimately an inability to move his legs or walk. By ambulance, Cooper returned to the Cooley Dickinson Hospital on July 21, 2007, where he was examined and it was suspected that he was suffering from a severe spinal cord injury. The attending emergency room physician consulted with the on-call trauma surgeon, who was at Baystate Medical Center in Springfield, and it was decided that Cooper be transferred to Baystate Medical Center for further specialty care.

Upon Cooper's admission to the Baystate Medical Center, a spinal CT scan was taken and it indicated bone fragments in the cord at T5-T6 level. An MRI of the thoracic spine revealed a fracture deformity at T5-6 with marked impression of the thoracic

cord. Cooper was assessed as having a significant T5 fracture deformity with compression of the thoracic cord resulting in "a complete cord injury at the left of T6." This resulted in Cooper having no motor strength in the lower extremities. The trauma team at Baystate Medical Center determined that emergency decompression and fusion would not reverse Cooper's paralysis. As a result, on July 27, 2007, Cooper was discharged from Baystate Medical Center and transferred to an inpatient rehabilitation facility. On October 13, 2007, Cooper died. The death certificate indicated that Cooper died as a result of severe pneumonia and respiratory failure with paraplegia indicated as an underlying cause.

3. *The expert opinion.* The gravamen of the plaintiff's complaint is that the three physicians departed from the proper standard of care by failing to conduct a proper radiological evaluation to rule out a "burst fracture" and exclude the possibility of paralysis. The theory of liability against the hospital was respondeat superior. As part of her offer of proof with respect to her claims against the defendant, the plaintiff offered an expert opinion report of an emergency room physician, Dr. R. Kent Sargent.[3]

Dr. Sargent noted that a thoracic spine compression fracture can be either of two general kinds, the most common of which results from "injury of osteoporotic (thin) bones" which "causes the anterior (front) part of the vertebral body to be crunched into a wedge shape." Although this kind of injury is very painful, it does not injure "any of the more posterior parts of the vertebral body which protect the spinal cord," so the spine is not damaged. This kind of compression fracture, Sargent stated, was "amenable to treatment with injection vertebroplasty, the procedure Dr. Irani does and which he offered to Mr. Cooper."

According to Dr. Sargent, the other major type of thoracic vertebral body compression fracture is called a "burst fracture." With this type of compression fracture, "a force is exerted more

---

[3]Not relevant to the defendant's conduct, the plaintiff also offered the expert opinion report of a radiologist, Dr. A. Robert Tantleff. Dr. Tantleff opined that the radiological review by Dr. Ciccarelli and the consultation by Dr. Irani fell below the proper standard of care and led to Cooper being discharged with an unstable burst fracture resulting in a spinal cord injury and death.

straight down and not at a forward angle (as in the usual compression fracture)." With this type of injury, there is no "wedge-shaping of the anterior (front) of the vertebral body." Instead, Dr. Sargent stated that the entire vertebral body is damaged, or crushed, including the posterior part where the spinal cord is located. This kind of compression, or burst fracture, frequently causes bony fragments to enter the spinal canal and the injury will often cause bleeding which can further compress the spinal cord. Burst fractures require "immediate neurosurgery." Dr. Sargent opined that this was the type of injury Cooper sustained.

Dr. Sargent described Cooper's X-ray as being gray and hazy, which made it inadequate to read accurately, and made it impossible to determine with certainty what type of fracture Cooper had suffered. Dr. Sargent believed that the only acceptable response for the defendant was to order a CT scan of Cooper's thoracic vertebrae. Dr. Sargent also stated that this case was "complicated further" by the fact that two radiologists, Dr. Ciccarelli and Dr. Irani, also chose not to do further imaging studies. Dr. Sargent opined that because Dr. Ciccarelli expressed doubt about the x-ray film's clarity,[4] he should have known the film was inadequate to properly evaluate the fracture. In the end, Dr. Sargent believed that if Dr. Ciccarelli had ordered a CT scan "the diagnosis of burst fracture would have been made at once and the huge risk of instability and having a fracture segment fall into the spinal canal with resultant paralysis could [have been] avoided."

2. *Discussion.* Pursuant to G. L. c. 231, § 60B, inserted by St. 1975, c. 362, § 5, medical malpractice actions "shall be heard by a tribunal consisting of a single justice of the superior court, a physician licensed to practice medicine in the commonwealth . . . and an attorney authorized to practice law in the commonwealth, at which hearing the plaintiff shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry . . . ." Section 60B requires a plaintiff to do more than merely plead facts constituting a cause of action because "the tribunal's mandate

---

[4]Dr. Ciccarelli wrote that "[t]here is a compression deformity of what appears to be T5." Dr. Ciccarelli ultimately determined there was a compression fracture at T5 and discussed the course of treatment with Dr. Irani.

is to evaluate evidence." *Little* v. *Rosenthal*, 376 Mass. 573, 578 (1978). To meet the statutory requirement of being "sufficient to raise a legitimate question of liability appropriate for judicial inquiry," a plaintiff's offer of proof is sufficient if (1) a doctor-patient relationship was shown; (2) there was evidence of the doctor's departure from good medical practice; and (3) damage resulted therefrom. *Kapp* v. *Ballantine*, 380 Mass. 186, 193 (1980).

The tribunal's task in evaluating the sufficiency of the plaintiff's offer of proof is akin to a trial judge's evaluation of a motion for a directed verdict. *Little* v. *Rosenthal, supra.* The evidence is to be viewed in a light favorable to the plaintiff, see *Blake* v. *Avedikian*, 412 Mass. 481, 484 (1992), and the tribunal may not examine the weight or credibility of the evidence. See *Perez* v. *Bay State Ambulance & Hosp. Rental Serv., Inc.*, 413 Mass. 670, 676 (1992). However, an offer of proof "must comprise more than mere conclusory allegations . . . ." *Booth* v. *Silva*, 36 Mass. App. Ct. 16, 20 (1994).

On appeal, the plaintiff claims that the tribunal improperly "considered the apportionment or ultimate determinations of liability." We disagree. In support of this argument, the plaintiff relies on a statement made by Dr. Robert Mausel, the medical member of the tribunal, during the hearing on the matter. After the defendant's attorney argued that the plaintiff's offer of proof did not meet the directed verdict standard, Dr. Mausel stated as follows: "I do have to agree with you on certain points here because if anyone's not negligent here it is [the defendant,] the [emergency room] doctor, the [emergency room] doctor examined the patient on all neurological complaints . . . . She did avail herself of the specialist who is more expert than she is, wh[o] is the radiologist. My biggest fault is with the radiologist . . . ." The problem with the plaintiff's claim is that this excerpted portion of the tribunal's hearing is not the tribunal's decision, nor is it the rationale for its decision any more than a transcript of an oral argument in this court would serve those purposes. Rather, the tribunal's sole task is to evaluate the sufficiency of the evidence contained in the plaintiff's offer of proof within the statutory rubric of G. L. c. 231, § 60B. See *Kopycinski* v. *Aserkoff*, 410 Mass. 410, 413-414 (1991); *Booth* v. *Silva, supra.* The tribunal's decision is reflected in a form entitled "Report of the Medical Malpractice Tribunal," which contains language

that tracks the tribunal's statutory mandate. See Jacobs & Laurence, *Professional Malpractice* § 5.23 (2007). The tribunal's report contains neither a determination nor an apportionment of liability. Rather, as reflected in the report, the tribunal determined only that the plaintiff's offer of proof was insufficient to raise a legitimate question of liability appropriate for judicial inquiry.

The plaintiff also claims that the tribunal improperly faulted Dr. Sargent's opinion on the standard of care because he had not stated it in formulaic terms. See *Rahilly* v. *North Adams Regional Hosp.*, 36 Mass. App. Ct. 714, 718 n.6 (1994) (opinion need not employ formulaic terms). The plaintiff again attempts to support her assertion with an excerpt from the tribunal hearing. On this occasion, she relies on a statement made by Thomas Merrigan, the attorney member of the tribunal, where he stated: "[Dr. Sargent] doesn't say any ER doctor should know this and meet this standard irrespective of whether or not that ER doctor calls in radiologists or consult[s] with them. . . . I think we need that to be told to us in the form of your offer." The plaintiff's reliance is misplaced. As noted above, Attorney Merrigan's comment is not the tribunal's decision.

In any event, when read in proper context, Attorney Merrigan's concern did not relate to the propriety of Dr. Sargent's articulation of the standard of care, but instead was focused on what necessary component was missing from the plaintiff's offer of proof.[5] By opining that in light of the haziness or inadequacy of Cooper's x-ray, good medical practice required the defendant to order a CT scan, Dr. Sargent did not offer an opinion that the defendant's actual conduct deviated from the appropriate standard of care. Specifically, Dr. Sargent did not state that the defendant failed to meet the appropriate standard of care when she did not order a CT scan after being advised by two experts in radiology that Cooper's treatment should progress in a different direction. In other words, we cannot conclude that the failure to order a CT scan was a failure to conform to good medical practice if that opinion failed to account for the fact that the defendant also

---

[5]In fact, in an earlier exchange with the defendant's attorney, the judicial member of the tribunal expressly noted that an expert's opinion need not use "magic language" to be sufficient. See *Nickerson* v. *Lee*, 42 Mass. App. Ct. 106, 111 (1997).

consulted with specialists in radiology, who were possessed with more expertise than she. Because Dr. Sargent's opinion was based on an assumption of facts that were not rooted in the evidence, the offer of proof was fatally deficient. See *LaFond* v. *Casey*, 43 Mass. App. Ct. 233, 237-238 (1997). See also *Jasper* v. *Tomaiolo*, 20 Mass. App. Ct. 201, 204 (1985), quoting from Liacos, Massachusetts Evidence 114 (5th ed. 1981) (an expert "cannot give an opinion unless it is properly based on the particular facts in dispute").

Finally, we are not persuaded by the plaintiff's claim, based on *Lucas* v. *Collins*, 51 Mass. App. Ct. 30 (2001), that it is implicit in Dr. Sargent's report that, "regardless of whether [the defendant] consulted with a radiologist," she should have known the x-ray was inadequate to make the diagnosis rendered without further radiological tests. While it is true that "a direct statement of the standard of care is not needed if '[t]he wrongs to which the language of the expert opinion letter speaks implicitly show how the defendant committed a breach of the standard of care owed to his patient,' " *Id.* at 33, quoting from *Nickerson* v. *Lee*, 42 Mass. App. Ct. 106, 111 (1997), unlike in *Lucas*, that did not occur here. While the lack of specificity in fixing the standard of care in the opinion at issue in *Lucas* was not fatal, here, the deficiency in Dr. Sargent's opinion is not revealed merely by his lack of specificity in fixing the defendant's standard of care, but rather because his opinion lacked any consideration of the defendant's actual conduct in seeking out the higher expertise of the radiologists with whom she consulted. Indeed, Dr. Sargent's opinion expressly relies on a scenario in which the defendant independently evaluated Cooper's x-ray; facts which are not borne out by the evidence. His opinion does not contain an assertion that an emergency department physician, confronted with these circumstances, would deviate from the governing standard of care if she failed to override the opinions of two experts in radiology and order a CT scan when the experts had not recommended that procedure. Given that deficiency, the tribunal properly determined that the plaintiff's offer of proof, even under the indulgent reading to which it was entitled, *Kilmartin* v. *Lowell Gen. Hosp.*, 23 Mass. App. Ct. 901, 902 (1986),

was not sufficient to raise a legitimate question of liability appropriate for judicial inquiry.

*Judgment affirmed.*