NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1199

JUDITH GEORGE-DRISCOLL, personal representative,[1]

vs.

UMASS MEMORIAL-MARLBOROUGH HOSPITAL & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Judith George-Driscoll, brought this wrongful death medical malpractice action against UMass Memorial-Marlborough Hospital (hospital), Tara B. Brigham, M.D., Katherine L. Van Zandt, N.P., and Sakeina R. Howard-Wilson, D.O. (collectively, medical providers), in her capacity as the personal representative for the estate of her son, John George (the decedent).  A medical malpractice tribunal, convened in accordance with G. L. c. 231, § 60B, reviewed the plaintiff's offer of proof and concluded that the evidence, if properly

_____

[1] Of the estate of John George.

[2] Tara B. Brigham, Katherine L. Van Zandt, and Sakeina R. Howard-Wilson.

substantiated, was insufficient to warrant further judicial inquiry.  Consequently, the plaintiff was required to post a bond to proceed.[3]  The plaintiff then filed a motion to reduce the bond amount, which was denied.[4]  After the plaintiff failed to pay the bond, the case was dismissed, and this appeal ensued. We affirm the judgment of dismissal.[5]

Background.  On March 31, 2021, the decedent, who had a medical history of morbid obesity, peripheral edema, and venous stasis, was admitted to the hospital's emergency department to receive treatment for cellulitis on his lower extremities. After several hours, during which he received morphine and Flexeril, the decedent was "observed to be somnolent, confused, and hypoxic."  Soon thereafter, he was found to be unresponsive and Narcan was administered.  The decedent's medical condition worsened; he was treated with bilevel positive airway pressure

---

[3] If the medical malpractice tribunal concludes that a case does not raise a legitimate question of liability appropriate for judicial inquiry, G. L. c. 231, § 60B, requires a plaintiff to post a bond of $6,000 to continue with the case.

[4] Although the record is not entirely clear, it appears that the plaintiff understood that she was required to post a bond in the amount of $24,000 ($6,000 for each of the four defendants). The defendants, however, consistently state that the total bond amount was $6,000.

[5] After the complaint was dismissed and the record on appeal was assembled, the plaintiff filed a motion to vacate the judgment of dismissal and a renewed motion to reduce the bond. Both motions were denied, and no appeal was taken therefrom.

after which he aspirated and then was transferred to the intensive care unit.  At this time, the decedent was diagnosed with acute respiratory failure with hypoxia and hypercapnia.  He remained on oxygen support and intubation until he suffered a cardiac arrest on April 19, 2021, and died.

The plaintiff alleges that the medical providers failed to calculate the correct dosage of analgesics and muscle relaxants that were administered to the decedent upon his admission to the hospital and did not adequately monitor his reaction to the medications.  She contends that if the defendants "had properly monitored and treated the [d]ecedent's medical condition, his cellulitis would not have escalated to acute respiratory depression and death."  As part of her offer of proof, the plaintiff submitted an opinion letter from Ellana Stinson, M.D., P.C., stating that morphine can cause "serious, life-threatening or fatal respiratory depression," and that "dosing and dosing intervals should be individualized to the patient based on different factors."  Stinson noted that the recommended dosage of morphine was "1-4 mg every 1-4 hours," which could be increased up to "10 mg every 4 hours for patients that are hospitalized in severe pain and low risk for respiratory depression."  She opined that given the decedent's "body habitus, size of neck, history of sleep apnea and other comorbidities, respiratory depression should have been

3

considered with high likeliness." According to Stinson, the decedent received morphine in doses which were higher than recommended for someone with a high risk of respiratory depression. However, she also concluded that "[i]t is not uncommon to dose and re-dose for pain that is not well controlled" and that the "ER providers were appropriate in looking for options to relieve the patient's pain which would include additional doses of analgesics. However, unclear [sic] if alternative analgesics were considered."

Additionally, Stinson opined that patients should be closely monitored during the "initiation of morphine, when [as here] doses are increased or re-dosed" and that because of the likelihood of respiratory depression, the decedent should have been placed on a monitor. Because the medical records which Stinson reviewed did not "reveal any continuous monitoring or repeated vital signs," she believed that the decedent was not properly monitored, and that the absence of monitoring was likely due to inadequate staffing. She further opined that the decedent was "likely boarding in the emergency room for several hours which is a common issue[] across our health care system" and that boarding, which is a growing problem that leads to poor clinical outcomes, also could have contributed to the decedent's

4

respiratory complications which, in turn, caused his death.[6]  She

summarized her opinion as follows:

> "[The decedent's] demise was a result of his respiratory
> depression that was exacerbated by the combination of
> flexeril and morphine in the ER.  This along with his co-
> morbi[di]ties resulted in hypoxia and hypercapnia for an
> unknown amount of time.  If identified sooner, may have
> resulted in earlier interventions and airway support.  This
> in turn led to respiratory complications that further
> complicated the remainder of his hospital course which led
> to respiratory dysfunction and ultimately death."

Discussion.  The plaintiff first contends that her offer of

proof was sufficient to allow the case to go forward without

posting a bond.  A medical malpractice tribunal is charged with

determining whether the plaintiff's offer of proof "is

sufficient to raise a legitimate question of liability

appropriate for judicial inquiry."  G. L. c. 231, § 60B.  A

plaintiff's offer of proof will prevail "(1) if the defendant is

a health care provider as defined in G. L. c.  231, § 60B,

(2) if there is evidence that the [health care provider's]

performance did not conform to good medical practice, and (3) if

damage resulted therefrom" (quotations and citations omitted).

Feliciano v. Attanucci, 95 Mass. App. Ct. 34, 37 (2019).  The

tribunal must apply a standard similar to that on directed

verdict to the evidence presented by the plaintiff.  Santos v.

---

[6] Stinson defined emergency department boarding as "the
practice of caring for admitted patients in the emergency
department after hospital admission."

Kim, 429 Mass. 130, 137 (1999). The evidence is to be viewed in the light most favorable to the plaintiff to determine whether a jury could reasonably return a verdict for the plaintiff. Feliciano, supra, at 38.

The plaintiff's offer of proof in this case was deficient in at least two respects. First, the plaintiff's expert does not explain how the treatment provided to the decedent fell below the requisite standard of care. Indeed, there is little discussion of the standard of care other than to outline the generally recommended dosage of morphine and to assert that the decedent should have been monitored. At the same time, Stinson noted that the decedent had been appropriately treated for pain and further opined that any absence of monitoring was likely due to insufficient staffing, rather than the actions of the individual medical providers. While we recognize that proper staffing typically falls within the hospital's responsibility, see Williams v. Steward Health Care Sys., LLC, 480 Mass. 286, 294 (2018), Stinson's opinion that staffing was not adequate is based on speculation. In her letter, Stinson writes: "patient [was] likely boarding in the emergency room for several hours" and "[a]nother likely contributing factor [to the decedent's boarding] may have been nursing and staffing issues" which "may have contributed to adverse effects that may have led to his hypoxia and hypercapnia." Such generalities and suppositions

6

are not sufficient to meet the directed verdict standard.  See Bradford v. Baystate Med. Ctr., 415 Mass. 202, 206 n.5 (1993) ("[l]iability . . . cannot be based on generalities in the reports of the plaintiff's expert").

Second, the plaintiff's offer of proof does not demonstrate that the improper administration of medication or absence of continuous monitoring, assuming that is the case, was the cause of the decedent's death.  Our cases hold that an expert's opinion that a causal relation is possible or conceivable is not enough to establish causation.  Such testimony must go beyond pure speculation, conjecture, or assumption.  See Keppler v. Tufts, 38 Mass App. Ct. 587, 592 (1995).  Contrast Goudreault v. Nine, 87 Mass. App. Ct. 304, 309 (2015).  Here, Stinson suggests that if the decedent's respiratory depression had been identified sooner, then earlier interventions "may have resulted."  However, the question remains whether any earlier interventions would have resulted in a different outcome.  See Keppler, supra, at 591 (evidence must indicate that defendant "more probably than not [] cause[d] . . . the loss of a substantial chance to survive" [citation omitted]).  In sum, while we are sympathetic to the circumstances of the decedent's death, we agree with the conclusion reached by the tribunal that the plaintiff's offer of proof was insufficient.  Accordingly, the complaint was properly dismissed.

The plaintiff next argues that the judge abused her discretion in denying her motion to reduce the bond. Specifically, she asserted that she was indigent and requested that the bond amount be reduced to $500 for each defendant.[7] The judge denied the motion in a margin endorsement without explanation.[8] As a result, we do not have the benefit of knowing the grounds on which the motion was denied. However, assuming without deciding that the plaintiff is indigent, we note that "a finding that a plaintiff is indigent does not require the judge to reduce the amount of the bond." Faircloth v. Dilillo, 466 Mass. 120, 124 (2013). The "standard is essentially one of reasonableness, and looks to whether a [litigant] who is able to pay and was paying the expenses [herself]" would use her own funds to pursue the action (citation omitted). Perez v. Bay State Ambulance & Hosp. Rental Serv., Inc., 413 Mass. 670, 678 (1992). Based on our review of the record, we conclude that the

---

[7] The plaintiff also asserted that dismissal of the case based on a failure to post a bond would result in the denial of her constitutional rights to equal protection and due process. While it is true that the failure to post a bond has prevented the plaintiff from pursuing her case, the Supreme Judicial Court rejected the same constitutional challenges to the bond requirement over four decades ago in Paro v. Longwood Hosp., 373 Mass. 645, 652-653 (1977). See also Faircloth v. Dilillo, 466 Mass. 120, 124 (2013).

[8] The plaintiff appealed the denial of her motion to reduce the bond to a single justice of this court, who denied relief on procedural grounds.

judge did not abuse her discretion in concluding, albeit implicitly, that the plaintiff's offer of proof did not establish that a reasonable person in her position would expend their own funds to further pursue the claim.  See <u>O'Leary</u> v. <u>Nepomuceno</u>, 44 Mass. App. Ct. 683, 684 (1998).

<u>Judgment affirmed</u>.

By the Court (Vuono, Henry & Wood, JJ.[9]),

Clerk

Entered:  July 10, 2025.

---

[9] The panelists are listed in order of seniority.